[In Bank.—June 15, 1883.]

# THE CITY AND COUNTY OF SAN FRANCISCO, APPELLANT, v. SPRING VALLEY WATER WORKS, RESPONDENT.

TAXATION—ASSESSMENT OF "CAPITAL" AND "CAPITAL STOCK" OF CORPORATION.—Where, prior to the adoption of the Constitution of 1879, all the tangible property of a corporation had been assessed, and the taxes paid thereon, and the corporation did not own, or have in its possession, or under its control, any of the shares of its capital stock, the same being owned and held by third persons, it is not liable for taxes assessed upon "capital," or upon "capital stock."

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The action was brought to recover State and city and county taxes for the fiscal year 1877–78 upon an assessment of "cap-

ital" six million dollars; and for the fiscal year 1878–79 upon an assessment of "capital stock" six million dollars.

The case was tried upon an agreed statement of facts, sufficiently set forth in the opinion.

*John P. Bell,* and *Louis H. Sharp,* for the Appellant, argued that "capital" and "capital stock" meant the property, real and personal, tangible and intangible, of the corporation, and that the admission in the agreed statement of facts that the defendant corporation did not own or have in its possession, or under its control, any of the *shares of the capital stock* is not an admission that the defendant did not own, possess or control its capital or its capital stock; that the capital or capital stock of a corporation and the shares of capital stock are distinct things. (Citing *Burrall* v. *Bushwick R. R. Co.* 75 N. Y. 211; *Farrington* v. *Tennessee,* 95 U. S. 686; Burroughs on Taxation, 143; *Minot* v. *P. W. & B. R. R. Co.* 5 Corp. Cases (18 Wall. 206), 37; *State* v. *Hood,* 15 Rich. 181; *People* v. *Commissioners etc.* 23 N. Y. 192, 219; *St. Charles St. R. R. Co.* v. *Board of Assessors,* 31 La. An. 853, 854; *N. O. & C. R. R. Co.* v. *Board of Assessors,* 32 La. An. 19; *Bank Tax Cases,* 2 Wall. 200; *Pacific Hotel Co.* v. *Lieb,* 83 Ill. 610; *Porter* v. *Rockford R. I. & St. L. R. R.* 76 Ill. 561; *State Railway Tax Cases,* 92 U. S. 603; *Nicholos* v. *New Haven & Northampton Co.* 42 Conn. 103, 122, 123, 125; *New Haven* v. *City Bank,* 31 Conn. 106; *State* v. *Cumberland & Penn. R. R. Co.* 40 Md. 51.) And they contended further that the admission in the agreed statement that all the *tangible,* real, and personal property of every kind held or owned by the defendant was assessed, was not an admission that its *intangible* property — its franchise — was assessed; that the existence of intangible property is well settled, citing *San Jose Gas Light Co.* v. *January,* 57 Cal. 614; *Burke* v. *Badlam,* 57 Cal. 594; *Spring Valley W. W.* v. *Schottler,* 62 Cal. 100.

*Fox & Kellogg,* and *F. G. Newlands,* for Respondent, argued that the assessment for "capital" was void, because, (1) it embraced all kinds of property, real and personal, without separately stating or separately valuing them, and (2) because

it created and produced double taxation by assessing and taxing under this head all the property that the company possessed, having already once assessed it for the same year in another form and under other headings or titles; and that the assessment of capital stock was void under the rule in the case of *People* v. *National Gold Bank*, 51 Cal. 508.

McKINSTRY, J. — By the revenue law of 1861 (Stats. 1861, p. 420), all property was taxable; and by its fifth section the term "personal property" was declared to include "the capital stock of all corporations." The sixteenth section of the Act of 1861 provided: "The owner or holder of any stock . . . . in any incorporated company or association, the entire capital of which is invested in property which is assessed, or the capital of which is assessed, shall not be assessed individually for his stock in such company or association. The thirteenth section required that the assessor should list and assess all property to the person, firm, corporation, association or company "owning or having possession, charge, or control of the same."

In *People* v. *National Gold Bank*, 51 Cal. 509, it had been found by the District Court that the capital stock of the defendant was three hundred thousand dollars, divided into shares of one hundred dollars each; that such shares were owned by persons other than defendant. It was held by the Supreme Court that the defendant could be held liable for the taxes sued for only on the theory that a corporation was liable, under the provisions of the Revenue Act of 1861, for taxes assessed upon its capital stock — that is to say, the "capital stock" regarded as the aggregate of the stock issued by the corporation. That the revenue act referred to did not provide that a corporation should be so liable, or be assessed therefor; but on the contrary, the provisions of the thirteenth section of the act required that the assessor should list and assess all property to the person, firm, corporation, or association "owning or having the possession, charge, or control thereof." That the provision of the thirteenth (sixteenth) section providing that the owner or holder of any stock in any corporation, the entire capital of which was assessed, or invested in property which was assessed, should not be assessed for his stock, was in effect a provision that

when the capital was not so assessed, the stock should be assessed to the owner thereof; that the provision of the thirteenth section, that the president of a corporation should furnish a statement of all the property " owned, claimed by, or in possession or control of the corporation," " tended strongly to show that the corporation should be assessed only for property owned, claimed by, or in possession or control of the corporation "; that the defendant, "not being the *owner* of the capital stock, the same having been issued to, and being held by other persons," was not liable for the taxes assessed upon the same.

It is urged by appellant that it would only have been necessary to decide that, under the act of Congress, the National Bank was not liable to taxation on its capital stock — citing *Bank Tax Cases*, 2 Wall. 200 — but that this plain and decisive fact was ignored by the counsel who argued the case, and by the court in deciding it. The report of the case shows that counsel did cite the *Bank Tax Cases* to the point that the legislature had not the power to levy a tax on the capital stock of national banks, not owned by the bank. *People* v. *National Gold Bank* was decided upon the letter of the revenue act of the State of 1861. The construction placed upon that act determined the case. The Act of 1861 was relied upon by counsel for the people, and the judgment of the Supreme Court was made to rest, and could properly be made to rest upon its provisions. The decision in *People* v. *National Gold Bank* is therefore an authoritative exposition of the provisions of the Revenue Act of 1861.

There were provisions of the Political Code, as the same read in the years 1876, 1877, and 1878, like those in the Revenue Act of 1861, referred to in *People* v. *National Gold Bank*.

Section 3628 directed the assessor to assess all property of the persons who " own, claim, have possession or control thereof."

Section 3640 read: " The owner or holder of any stock in any firm or corporation, the entire capital or property whereof is assessed, must not be assessed individually for his stock in such firm or corporation."

Section 3629 required of the assessor that he exact from each person a statement in writing of "all property belonging to, or claimed by, or in the possession of, or under the control or

management of any corporation of which such person is president," etc.

It will be observed that the present action is based upon assessments levied before the adoption of the present Constitution.

In *People* v. *National Gold Bank* it affirmatively appeared that the shares of the capital stock of the bank were all owned by persons other than the bank. When the present action was here before (54 Cal. 571) it was held that the demurrer to the complaint had been improperly sustained by the Superior Court. The complaint is a special statutory complaint, and, in such case, the rule that averments are to be taken more strongly against the pleader has no application. When the plaintiff adopts the form of the statute he states every fact necessary to a recovery. Hence it was properly said it did not appear but that the defendant did own the capital stock assessed to it. But, by the agreed statement of facts, it now appears that the defendant *did not* on the first Monday of March, 1877, or on the first Monday of March, 1878, or at any time during the fiscal years 1877–78, 1878–79, own, or have in its possession, or under its control, any of the shares of the capital stock of defendant, but that all the shares of capital stock of said defendant were, on such dates, and throughout such fiscal years, owned and held by persons other than the defendant. And it further appears in the *agreed statement*, that "all the tangible real and personal property of every kind, held by or belonging to the defendant, in the city and county or elsewhere, was assessed to said defendant" for the fiscal years 1877–78 and 1878–79 for city and county and State purposes, and such assessments were fully paid.

It follows that *People* v. *National Gold Bank, supra*, is decisive of this case.

Judgment and order affirmed.

ROSS, J., MYRICK, J., SHARPSTEIN, J., and McKEE, J., concurred.

THORNTON, J., concurred in the judgment, and stated the grounds of his concurrence in the following opinion filed July 21, 1883:—

In concurring in the judgment of this court affirming the

judgments and orders in the causes above entitled, I said that I would at a future day state the grounds of my concurrence. I now proceed to do so.

The assessments on which these actions were brought were for the fiscal years 1876–77, 1877–78, and 1878–79. The assessment for the first fiscal year just mentioned was upon "capital" *eo nomine.* That assessment was counted on in the case numbered 8,213. The assessment for the year 1877–78 was also on "capital," and that for the last year mentioned was on "capital stock." These were counted on in the case numbered 8,212.

We find nothing in the assessments or in the cases which favors the idea that these words "capital" and "capital stock" are used in the assessments in other sense than their ordinary and popular one. The words "capital" and "capital stock" have long had a recognized popular meaning. They have been used so long in relation to forms of association for conducting business of various kinds, in connection with the commerce, trade, and manufactures of the world, that it would be surprising if they had not acquired a meaning definite and well understood by all men of ordinary intelligence. And it so happens that this meaning corresponds with the definitions of learned text-writers and jurists, and decided cases. Cases may be found in which *capital stock* is treated of with a different signification, but this signification is impressed on the words by a statute. The words in these cases have then a peculiar meaning impressed on them by legislative enactment, which the courts administering the laws giving those definitions are bound to regard and cannot depart from, there being no constitutional impediment inhibiting the State, by its legislature, from imposing this definition on the words.

What is this ordinary and popular meaning? In the case of an individual, say a merchant, it is the fund of money or the property on which he does business. In the case of a voluntary association of persons for conducting a business, as, for instance, a partnership, it means the fund of money or property controlled by one or more of the associates employed as a basis of a business, on which and with which the business is to be commenced and carried on. (See Burrill's Dict., word "capital"; Abbott's Law Dict., word "capital"; Webster's Dict., word "capital";

Worcester's Dict., same word; Imperial Dict., words "capital" and "stock.") It is called *capital* from the Latin *caput*, a head, because it is the chief thing—the *head*, beginning and basis of an undertaking or enterprise. (See Burrill's Law Dict., word "capital.") *Stock* has substantially the same meaning. (See the word in the dictionaries above quoted.) *Capital* and *capital stock*, in ordinary parlance, when applied to combinations or associations for transacting business, have the same meaning, the former being an abbreviated form of the latter. Such abbreviations have been common through all time. Especially is this the case in our time-saving and labor-saving era. Hence, when one in these days speaks of the *capital* of a partnership or corporation or joint-stock company, we readily understand him as referring to the *capital stock* of such associations. (See *N. O. C. G. L. Co.* v. *Board of Assessors*, 31 La. An. 477.)

The cases in which definitions of these words are given are numerous. In *Bailey* v. *Clark*, 21 Wall. 286, the question arose as to the meaning of "capital" in a revenue act of the federal government, and the definition thereof is clearly given by the court, speaking by Field, J. After stating that the term is not used in the act in any technical sense, but in its natural and ordinary signification, the learned justice observes as follows: "When used with respect to the property of a corporation or association, it has a settled meaning; it applies only to the property or means contributed by the stockholders as the fund or basis for the business or enterprise for which the corporation or association was formed. . . . . And when used with respect to the property of individuals in any particular business, the term has substantially the same import; it then means the property taken from other investments or uses, and set apart for and invested in the special business, and in the increase, proceeds, or earnings of which property, beyond the expenditures incurred in its use, consist the profits made in the business." (21 Wall. 286; see *Railroad Companies* v. *Gaines*, 97 U. S. 707; *Farrington* v. *Tennessee*, 95 U. S. 686, and cases cited in this case, where the distinction between capital stock and shares of the capital stock is clearly defined.)

In *Burrall* v. *Bushwick R. R. Co.* 75 N. Y. 216, substantially the same definition is given. The court there said:

"The capital stock is that money or property which is put into a single corporation by those who, by subscription therefor, become members of the corporate body. (See *People* v. *Home Ins. Co.* 29 Cal. 545; *Martin* v. *Zellerbach*, 38 Cal. 308, 309.)

In the second section of the Act of April 14, 1853, entitled, "An act to provide for the formation of corporations for certain purposes" (Stats. 1853, p. 87), the requisites of the certificate of incorporation are prescribed. Among these are the amount of the capital stock of the corporation, and the number of shares of which the stock shall consist. Under this statute the respondent corporation was formed. (See Act of 1858, p. 218; *Spring Valley W. W.* v. *Schottler*, 62 Cal. 100.) Capital stock is referred to in sections thirteen and fourteen of the Act of 1853 above mentioned. We have an adjudication of its meaning in the thirteenth section in *Martin* v. *Zellerbach*, 38 Cal. 308, according with the definitions above given. There cannot be any doubt as to the meaning of the same expression in the second and fourteenth sections—that they mean the same as in section thirteen. We see no reason why "capital stock" in the assessments in these cases does not have the same significance as in these sections.

Reference might be made to many other cases. A great many will be found collected in Winfield's Adjudged Words and Phrases, under words "capital stock," and "stock," and Lawson's Concordance under words "capital," and "capital stock," and "stock." I have examined many of them, and in none of them have I found the words "capital" and "capital stock," when used in their natural and ordinary signification, having any other meaning than that above designated. I think I can safely say from the examination made that there is no case where any other meaning is attached to the words referred to, where there is nothing in the context showing that they are used with some other meaning, except the case of *The People* v. *The National Gold Bank of D. O. Mills & Co.* 51 Cal. 508, referred to in the opinion of my associates. The ruling in the case just cited, holding capital stock to mean shares, is a departure from all the other cases, as there was nothing in the assessment and nothing in the statute (see Act of May 17, 1861, Stats. of 1861, p. 419) qualifying or changing the meaning of

the words employed in them respectively. By the terms of the act (see fifth section referred to in the opinion) *personal property,* when used therein, is to include *inter alia* "the capital stock of all corporations, companies, associations, firms, or individuals doing business or having an office in the State." Nothing here changes the meaning of capital stock from its natural and ordinary sense. On the contrary, taking it in connection with the words used along with it in the section, it is evident that it is used with that meaning. The words referred to are "*companies,* associations, firms, or individuals." The capital stock means the same thing here, as regards corporations, that it does when spoken of companies, associations, firms, or individuals. On the rule *noscitur a sociis,* the signification indicated is the natural and ordinary one.

The thirteenth section of this Act of 1861 is also referred to, in which it is provided that the president, etc., of the corporation shall furnish under oath "a statement of all the real estate and personal property within the county, owned, claimed by or in possession, or under the control of such corporation." It is said there is no provision that he shall furnish a statement of the capital stock of such company. The capital stock of the company is the property of the company. (*Burrall* v. *Bushwick R. R. Co.* 75 N. Y. 216.) In that case, to the definition of capital stock as a corporate fund above quoted, is added this: "That fund becomes the property of the corporate body." (See *Farrington* v. *Tennessee,* 95 U. S. 686; *Barry* v. *Merchants' Exchange Co.* 1 Sand. Ch. 305, 306; *Bailey* v. *Clark,* 21 Wall. 286; *Gashwiler* v. *Willis,* 33 Cal. 11.) In the cases cited from 75 N. Y. and 95 U. S. the well-known difference between the shares of capital stock, and the capital stock is pointed out. The capital stock is as much owned by the corporation as the capital stock of a firm is owned by the firm. The corporation owns the capital *in trust* for the stockholders; the owners of the shares are *cestuis que trust.* The president is, by the requirements of the statute, to make a statement of all the property of the corporation. This requisition is made because the property of the corporation may exceed the capital stock, as is clearly shown in *Barry* v. *Merchants' Exchange Co.* 1 Sand. Ch. above quoted. (See pp. 306, 307.) See also thirteenth section of Act

of 1853, under which the respondent corporation was formed, by which the trustees representing the corporation are forbidden to divide, withdraw, or in any way pay the stockholders or any of them any part of the capital stock of the company. (Stats. 1853, p. 89.)

I see no reason to hold that capital stock either in the Act of 1861 or the assessment in *People* v. *National Bank etc.*, above cited from 51 Cal., had any other signification than its ordinary one above given. A contrary ruling is opposed to principle and decided cases. Under these circumstances, with high regard for the court making the decision, I do not think the case should be followed.

Indeed, I think the case was practically disregarded in the cases under consideration when they were before this court on demurrer to the complaint. (See *San Francisco* v. *Spring Valley Water Works*, 54 Cal. 575, and another case with same title, 54 Cal. 603.)

I conclude from the foregoing that the assessment of the capital and capital stock of the corporation embraced all of its property of every kind which could be denominated the corporate fund paid in, or property furnished by the subscribers or stockholders for carrying on the business of the concern. In whatever shape it may exist, this assessment includes it. It makes no difference that the capital-stock fund was originally money. Whatever the money is invested in takes the place of the money, and becomes a part of the capital stock. This is so self-evident that it needs no citation of authority to sustain it, but the cases sustaining it are numerous. (See *New Haven* v. *City Bank*, 31 Conn. 109; *Bligh* v. *Brent*, 2 Younge & C. 294–5.)

It is admitted in both cases that all the tangible real and personal property of every kind, including money on hand or on deposit, held by or belonging to the defendant in this State, was assessed to defendant for the fiscal years above mentioned, and that the taxes were fully paid. According to the views above expressed, the assessments under consideration include all the property just mentioned, and embrace the capital stock, and may be more than the capital stock. (See *Bank Tax Case*, 2 Wall. 200; *Bank of Commerce* v. *N. Y. City*, 2 Black, 620.)

To allow then a recovery in these cases would be to require

the defendant to pay taxes twice on the same property for the same years, which is opposed to all law and should not be permitted.

It has been stated in a former part of this opinion that the words "capital" and "capital stock" have been impressed by legislation with a meaning different from its popular, natural, and ordinary one. Such is the case, in the cases cited by counsel for appellant from the Louisiana and Illinois reports, as an examination of them will show.

The Illinois cases cited are: *Porter* v. *Rockford R. I. & St. L. R. Co.* 76 Ill. 561; *Pacific Hotel Co.* v. *Lieb*, 83 Ill. 610; *C. B. & Q. R. R. Co.* v. *Sides*, 88 Ill. 324; *Danville Manufacturing Co.* v. *Parks*, 88 Ill. 464; *Quincy Bridge Co.* v. *Adams Co.* 88 Ill. 621; *O. & M. R. R. Co.* v. *Weber*, 96 Ill. 448; *C. P. & S. W. R. Co.* v. *Raymond et al.* 97 Ill. 212; to which might be added *Republic Life Insurance Co.* v. *Pollak*, 75 Ill. 292; *Ottawa Glass Co.* v. *McCaleb*, 81 Ill. 556; and *Huck* v. *Chicago & Alton Railroad Co.* 86 Ill. 352.

The cases cited from Louisiana are *City of New Orleans* v. *Mechanics' & T. Insurance Co.* 30 La. An. Part 2, 876–8; *New Orleans Gas Light Co.* v. *Board of Assessors*, 31 La. An. 475; *City of New Orleans* v. *Canal B. Co.* 32 La. An. 160; *State* v. *Louisiana Sav. Bk. & S. D. Co.* 32 La. An. 1136.

The Illinois cases relate to the system of revenue of the State of Illinois, mainly to the Revenue Act of 1872, and the rules and regulations made by authority of that act, having the force of a statute, and the meaning attributed to the words "capital stock" is that imposed on them by the statute and the rules and regulations. In the case of *O. & M. R. Co.* v. *Weber*, 96 Ill., above cited, the meaning is stated as follows : " The term " capital stock " means all the property and rights of the corporation of every kind and nature wherever located." (96 Ill. 448.) This meaning is attributed to " capital stock" in all these cases ; a meaning broad enough to include franchise as part of the property of the corporation. Indeed the statute requires the capital stock of all companies and associations to be so valued as to include franchise. (See 3d section of Act of March 30, 1872, the text of which will be found in 92 U. S. 578 ; see, also, *Porter* v. *Rockford R. I. & St. L. R. Co.*, cited above,

where it is distinctly held.) A lucid exposition of the system of taxation under the laws of Illinois will be found in the opinion of the Supreme Court of the United States, drawn up by Justice Miller in *State Railroad Tax Cases*, 92 U. S. 575, approving the early cases in Illinois, among which is mentioned *Porter's* case, above cited. (92 U. S. 617.) The opinion in this case also shows that the broad meaning attributed to capital stock in the cases above referred to is derived as above stated. In the report of this case will be found the rules and regulations above referred to.

It will be seen, from an examination of the Louisiana cases, that the value of the capital or capital stock is to be ascertained from the market price of the stock or any other manner. This is so declared by statute. (*N. O. City Gas L. Co.* v. *Board of Assessors*, 31 La. An. 477, where the statute is referred to.) When so ascertained it includes franchise. (See page last cited, *Comm.* v. *Hamilton Mfg. Co.* 12 Allen, 298–304; *Nichols* v. *New Haven, etc. Co.* 42 Conn. 122.) From this value is to be deducted the value of the real and personal estate. separately assessed; the remainder is the value of the capital stock to be assessed, and may be designated in the assessment as capital stock. (See case just cited, *State* v. *La. Sav. Bk. and S. D. Co.* 32 La. An. 1138; and *City of N. O.* v. *N. O. Canal and Banking Co.* 29 La. An. 851.) These cases are interpretations of the revenue laws of Louisiana, and the courts of that State, in administering its laws, have held capital stock to have the signification above indicated.

But it is said capital stock includes franchise, and the cases just above mentioned are cited on behalf of appellant to sustain this position. We have already stated what the meaning of capital stock is when used in its ordinary legal acceptation, and it is so used, we think, in the assessments in these cases, and there is nothing in the statute under which these assessments were made giving any other meaning to these words. The definition given in a previous part of this opinion is sustained by the authorities. The meaning given to capital stock by the courts of Illinois and Lousiana in the cases above cited includes franchises, and such meaning is, as we have shown, derived from the construction of the laws respecting revenue systems of those States. *Gordon* v. *Appeal Tax Court*, 3 How. 133, 150, is a

direct authority that the franchise is different property from the capital stock, though they are both the property of the corporation. (See also *Bligh* v. *Brent*, 2 Younge & C. 294.)

But it is further argued that the capital stock, or some portion of it, may have been in a franchise, and as the action of the assessor must be held regular and lawful until the contrary is shown, the assessments ought to be sustained on the ground that the assessor assessed such property, and it is not made to appear that the respondent did not own such property when the assessments were made. If the respondent had purchased such a franchise, it can scarcely be conceived as existing unconnected with property, and in assessing such property, the value of the franchise would be taken into account in estimating its value. No allusion is here made to the acquisition of the rights or franchises of one corporation by another. In such a case there is usually a consolidation or amalgamation, another corporation is formed, and the franchise of such new being is to be assessed in the mode most common, by taking the aggregate value of the shares of the capital stock, and deducting from such aggregate the assessed value of the tangible property of the corporation. (As an instance, see the case of consolidation of the two cases referred to in *N. O. City Gas Light Co.* v. *Board of Assessors*, 31 La. An. 476, above cited.) So if, in the case of the admitted assessment of the tangible property of the corporation in this case the value of any right in the nature of a franchise entered into such property, it should be presumed that it was taken into account by the assessor in ascertaining the value of such property and was included in the assessments sued on.

If the assessor intended to include the franchise or faculty of being a corporation in the assessments, it was an easy matter to signify such intention by designating it as "franchise" or using some other words which on a fair interpretation would evince such intention, as in *N. O. C. G. L. Co.* v. *Board of Assessors*, cited above, where the assessment was of "capital and other values" (31 La. An. 475); and in some such mode the assessment of such franchise should be made.

In coming to the conclusion herein reached, I lay out of view entirely the fact admitted in the cases, that the shares of the capital stock had been sold to other persons, and were not the prop-

erty of the corporation when the assessments were made. Such matter is entirely immaterial in the view taken in this opinion. I put my concurrence in the judgment of my associates on the distinct ground that to allow a recovery in these cases would be to sanction double taxation; that the capital or capital stock had already been assessed in assessing the tangible property of every kind owned by respondent, upon which last assessments the taxes had been paid.

Rehearing denied.