<hr/>

'In Bank. — January 15, 1884.]

# IN THE MATTER OF GEORGE W. TYLER, ON HABEAS CORPUS.

CONTEMPT—THREATENING AND INSULTING LETTER TO GRAND JURY. — Writing and sending an accusatory, threatening, and insulting letter to a grand jury in relation to matters which are the subject of their investigations, is a contempt of court.

ID. — PUNISHMENT BY FINE—IMPRISONMENT TO ENFORCE PAYMENT— JURISDICTION. —The court has power to punish such contempts by fine, and to enforce the payment thereof by imprisonment at the rate of two dollars per day.

APPLICATION for a writ of habeas corpus. The facts are stated in the opinion of the court.

*George W. Tyler*, in person.

*J. D. Sullivan*, and *D. T. Sullivan*, for Respondent.

MCKEE, J.— From the return to the writ issued in this proceeding it appears, that the petitioner has been imprisoned under an order of commitment, made by the Superior Court of the city and county of San Francisco, for a contempt of court, of which he has been adjudged guilty and sentenced to pay a fine of five hundred dollars, or be imprisoned until payment of the fine at the rate of two dollars per day for every day's imprisonment.

The order was made by a court of competent jurisdiction, and the only questions arising out of the return are whether the act for which the petitioner has been adjudged guilty and punished constituted a punishable contempt of court; and whether the court exceeded its jurisdiction in the punishment which it inflicted.

An act which is lawful or meritorious in itself, or which has been done in the assertion of a lawful right, is not a punishable criminal act merely because it has been so adjudged. In this instance the act condemned and punished consisted of writing and sending to a grand jury, then sitting in the court in and for which it had been empaneled and sworn, a letter, signed by the petitioner as "attorney for Mrs. Sharon," and addressed to " W. T. Garrett, Esq., and members of the grand jury," reflecting by severe and opprobrious language upon the conduct and integrity of the jurors in connection with charges, which were the subject of investigation against the woman whom the petitioner represented as attorney. In substance, it accused and denounced many of the jurors of permitting themselves to be corruptly used by a person of wealth, for the purpose of making presentments or finding indictments against the woman, upon matters which were the subject of litigation between her and him in the civil courts, to gratify his private malice, to oppress and crush the woman by his wealth, and to obstruct the course of justice in the civil tribunals.

If the invectives against the person named in the letter, and others, who are accused of having been hired by him to aid and abet him in his design, were founded upon facts, and the petitioner, as an attorney of the court, had suggested them to the court in a regular way, it is not to be doubted that upon such a suggestion judicial inquiry would have been instituted, and that, if there were adduced any evidence at all to sustain the suggestion, prompt action would have been taken to vindicate the law, maintain the respect due to the court, and to protect the court and the grand jury under its supervision and legal control against persons implicated in the attempt to commit, or in the commission of such criminal acts. For it is criminal to tamper with or to attempt to tamper with a jury or judicial officers in the performance of their duties. Bribing, or offering to bribe, corruptly influencing, or attempting to influence, a juror by means of promises or assurances of any pecuniary or other advantage, or by means of any threat, intimidation, persuasion, or entreaty, or by means of any communication, oral or written, had with him, except in the regular course of proceedings, in respect to his verdict or decision in any cause or proceeding, are

made by law criminal offenses, punishable by imprisonment in the State prison. It is also a penitentiary offense for a juror to wilfully and corruptly permit any communication to be made to him . . . . relating to any cause or matter pending before him, except according to the regular course of proceedings; or, "to receive any bribe upon any agreement or undertaking that his vote, opinion, or decision, upon any matter or question which is or may be brought before him for decision, shall be influenced thereby. (§§ 93, 95, 96, Pen. Code.) And such criminal acts are also punishable as contempts of court, for they taint with suspicion the proceedings which they touch, embarrass, hinder, and delay courts in the exercise of their functions, and, if suffered to pass unrebuked and unpunished by the court whose proceedings are tainted by them, they result in a paralysis of judicial confidence. To prevent, arrest, and punish for such offenses, whether committed or attempted to be committed, by or upon any grand juror, is therefore the duty of every court in which such a jury may be sitting in the discharge of its duties; and if guilt should be found to attach to members of the grand jury, the jury should be promptly discharged, and the matters against the members thereof should be referred to another grand jury. Not only would it be greatly embarrassing to the administration of justice, but exceedingly mischievous, in every way, to overlook or in any way sanction such acts. It is of the highest importance that jurors and judicial officers should be protected and preserved not only from all improper influences, but even from the suspicion of such influences.

But while it is the right and duty of an attorney to address himself to a court for the purpose of putting in motion the power of the court to prevent the commission of such criminal acts, or to vacate and set aside proceedings tainted by them, or to convict and punish persons guilty of them, it is altogether irregular, unlawful, and criminal to send accusatory and threatening communications to a court or jury sitting with it, while engaged in the discharge of its duties. None should know better the relation between court and jury, and the consideration and respect due to them, than an attorney who is an officer of the court, bound by his oath of office, "to support the Constitution and laws, to maintain the respect due to the courts of justice

and judicial officers; bound also to employ, for the purpose of maintaining the causes confided to him, such means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by any artifice or false statement of fact or law ; and to abstain from all offensive personality, and to advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the case with which he is charged." (§ 282, Code Civ. Proc.) None knew better than the petitioner that, in the investigation of offenses which are within their knowledge or which have been brought to their attention by the court or district attorney, a grand jury cannot receive any other evidence than the testimony of witnesses produced and sworn, or documentary evidence, or the depositions of witnesses taken according to law, and that the course which he pursued was forbidden by law, and violative of the duty which he owed to the court.

Unquestionably, the fact of the existence of exculpatory evidence may be brought by any citizen to the attention of the grand jury in a regular way. If such evidence exists, and they have reason to believe that it is within their reach, they may request it to be produced, and for that purpose may order the district attorney to issue process for the witnesses (§ 920, Pen. Code), to the end that the citizen may be protected from the trouble, expense, and disgrace of being arraigned and tried in public on a criminal charge for which there is no sufficient cause. A grand jury should never forget that it sits as the great inquest between the State and the citizen, to make accusations only upon sufficient evidence of guilt, and to protect the citizen against unfounded accusation, whether from the government, from partisan passion, or private malice.

But the letter was neither written nor sent for the purpose of informing the grand jury of evidence which would explain away the charges under investigation against the petitioner's client. It was aimless for any purpose, except to exasperate the jurors, by the aspersions upon their official conduct which it contained, or to deter them from performing their duties by the threats of public clamor which it expressed, or to create a distrust and a want of confidence in any action which might be taken as the result of their investigation, and thus to embarrass the court itself in the administration of justice.

That such a communication to a jury sitting in, or in connection with a court, of which it is a component part, and while engaged in the exercise of its functions, is a punishable contempt of court does not admit of doubt. "Any publication, whether by parties or strangers, which concerns a case pending in court, and has a tendency to prejudice the public concerning the merits, or which reflects on the tribunal or its· proceedings, or on the parties, the jurors, the witnesses, or the counsel, may be visited as a contempt." (Bishop's Criminal Law, § 216.) It would be strange if, under a government of law, it were otherwise. On the part of an attorney, it is not only a violation of the duty which he owes to the court, but an inexcusably unlawful interference with its proceedings (subs. 3, 9, § 1209, Code Civ. Proc.), directly tending to impair the respect due to its authority. (§ 166, Pen. Code.) As such, the act of the petitioner was punishable not only as a contempt of court, but as an offense against the criminal law.

In the punishment inflicted, the court did not exceed its jurisdiction. It had jurisdiction to punish by fine not exceeding five hundred dollars, or imprisonment not exceeding five days, or by both. (§ 1218, Code Civ. Proc.) In the exercise of its jurisdiction, it imposed a fine of five hundred dollars, and that exhausted its statutory power of punishment; but the committal was not an additional punishment, it was simply the written mandate or process by which the court undertook to enforce its judgment. A judgment of fine is enforcible by an execution, as on a judgment, in a civil action (§ 1214, Pen. Code; § 1006, Code Civ. Proc.), or by commitment under the criminal law. (§ 1205, Pen. Code.) A person against whom such a judgment has been pronounced has, therefore, the privilege, under the law, of paying it either by money or by imprisonment. If he pays in money there can be no commitment. If he refuses to pay in that way, the commitment follows, as an incident to the judgment, until the judgment has been complied with according to law. (§§ 1215, 1456, *supra; Ex parte Crittenden*, 63 Cal. 534.)

The petitioner is remanded.

MORRISON, C. J., MYRICK, J., and McKINSTRY, J., concur-

ring.—We are of opinion that the petitioner, in sending the letter set forth in the return (containing as it did threatening and insulting language), was guilty of contempt, and that he thereby subjected himself to punishment. We are also of opinion that the court had power to enforce the payment of the fine imposed, by the method adopted by it. (*Ex parte Crittenden*, 63 Cal. 534.)

We therefore concur in the judgment.

THORNTON, J., concurring.—That the grand jury is a part of the court, I think to be too well settled to be now disputed. Any citizen has a right to present charges of misconduct against any member or members of the grand jury to the court of which it forms a part, that the same may be investigated. But an insulting letter addressed and sent to such jury in relation to their functions, and saying to them that if they find an indictment against a person whose cause is before such jury for investigation, the community will conclude that they have been bribed to do so, is not submitting charges against them to the court, but is an unlawful interference with the proceedings of the court, tends to intimidate the grand jury in the discharge of their duties, and to obstruct the course of justice, and is a contempt of court. (§ 1209, Code Civ. Proc.) The court below clearly had jurisdiction of the matters involved in this case to fine and to designate the mode of collecting the fine which was adopted by its judgment. This is true if we measure the power of the court by the statute of this State, and was so ruled in *Crittenden's Case*, 63 Cal. 534. The court having jurisdiction determines this case.

In my opinion the applicant for the writ should be remanded and the writ discharged.

SHARPSTEIN, J., concurring.—I concur in the judgment. I think no one would be to the trouble of communicating his views in writing to a grand jury on a matter which it had, or was likely to have, before it, unless he expected thereby to influence its action; and I think the policy of the law is to keep juries as free as possible from outside influences. How that can be done, if every one who feels so inclined shall be at

liberty to communicate his views in writing to a jury on any matter which it may have before it, is to me inconceivable. I think every act of the kind constitutes an unlawful interference with the proceedings of a court.