[Civ. No. 8459.   First Appellate District, Division One.—February 20, 1933.]

TOBEY   IRWIN,   Appellant,   v.   JOHN   P.   MURPHY, Respondent.

Leon Samuels for Appellant.

Robert E. Fitzgerald for Respondent.

PARKER, J., *pro tem.*—This is an appeal from a judgment made upon an order sustaining, without leave to amend, a demurrer to plaintiff's amended complaint in an action to recover damages for libel and slander.

We summarize the complaint. It is alleged that in the year 1929 defendant, together with eighteen other persons, constituted the grand jury in and for the city and county of San Francisco, regularly drawn, impaneled and sworn; that on or about September 26, 1930, the said persons, acting under order of official authority as a grand jury, did make and publish openly and publicly, and cause to be circulated, a certain written report. This written report set forth that the grand jury had made an investigation into the details connected with a certain boxing contest theretofore held in the city and county of San Francisco and that the evidence presented to the grand jury did not permit the return of indictments against any of the principals involved. The report then continued and stated that the evidence presented did justify certain conclusions. These conclusions referred to the manner in which boxing matches were conducted, and the conduct and character of those connected with the promotion and management of such contests. Among other things it is said in the report that professional boxing has become a "racket" not cleanly conducted; that gambling cliques and other evil influences dominate the boxing clubs; also that certain referees are selected as a money-getting scheme; that the boxing commissioner for the bay district is unfit; that the referee in

the fight or contest being investigated was guilty of carelessness and inefficiency, and that his testimony before the grand jury was in conflict with other testimony; that unsportsmanlike conduct on the part of one contestant, combined with an uncalled for viciousness, resulted in the death of his opponent. The grand jury, then, in the same report, made certain recommendations. It was recommended that the Governor request the resignation of the boxing commissioner, and that the state athletic commission perpetually revoke the license of Mr. Tobey Irwin as referee. It was further stated that for the betterment of existing conditions the following suggestions were offered; namely, that the "fight game" was controlled by sure-thing gamblers whose influence spread through clubs, managers and fighters, and that fighters' seconds and even the referee are but puppets subject to dismissal upon failure to obey the orders of the powers in control. The report concludes with suggestions as to the remedy. The complaint then alleges that the particular fight mentioned in the report was a boxing contest held under and pursuant to a statute of this state, and the plaintiff was the referee of said contest, duly appointed to such position according to the provisions of the statute. The complaint thereafter contains appropriate allegations of falsity, and lack of privilege, and damage to plaintiff both as an individual and as a referee. Likewise does the complaint amplify upon the publication of said libelous matter.

A second count in said complaint is based upon an alleged slander. The basis thereof is an alleged oral statement made by defendant in referring to said report, wherein he stated the plaintiff had been lucky to get off so easily and had been rather lightly dealt with by the grand jury in view of the conflicting testimony presented.

The main question presented upon this appeal is that of privilege. The character of the alleged publication, whether libelous or not, is not argued, and for all purposes here might be conceded. However, if it were essential to a decision, we would not readily make such a concession. The nicer points of pleading are likewise not discussed. Here again a concession might be made on the point that privilege is a defense, and lack of privilege need not be specifically pleaded. ■ Yet, on this point, it needs no citation of authority that where a complaint in libel shows on its face

that the publication was privileged no cause of action is stated. (*Gosewisch* v. *Doran,* 161 Cal. 511 [119 Pac. 656, Ann. Cas. 1913D, 442].) The ground upon which the court below made its order sustaining the demurrer without leave to amend is that the publication is and was privileged, the *ratio decidendi* being that a grand jury is a judicial body and its report a judicial proceeding.

Preliminary to any discussion of the powers, rights and duties of a grand jury or its members, it may be well to ascertain just what manner of organization a grand jury may be. Section 192 of the Code of Civil Procedure defines a grand jury as follows: "A grand jury is a body of persons, nineteen in number, returned in pursuance of law, from the citizens of a county, or a city and county, before a court. of competent jurisdiction, and sworn to inquire of public offense committed or triable within the county or city and county." Section 8 of article I of the Constitution provides that a grand jury shall be drawn and summoned at least once a year in each county. These provisions demonstrate that a grand jury is not a nondescript gathering of local celebrities enthused with zeal for civic betterment, but rather a body of citizens forming a part of the government, and are essential under the organic law.

█ A grand jury is a judicial body and grand jurors are officers of the court. (*Ex parte Sternes,* 82 Cal. 245 [23 Pac. 38]; *Turpen* v. *Booth,* 56 Cal. 65 [38 Am. Rep. 48]; *In re Gannon,* 69 Cal. 541 [11 Pac. 240].) In the code definition we find the outline of at least a part of the function of a grand jury, namely, to inquire of public offense. (Code Civ. Proc., sec. 192; also, Pen. Code, sec. 915, to the same effect.)

In the *Matter of Tyler,* 64 Cal. 434, 437 [1 Pac. 884, 887], it was said: "A grand jury should never forget that it sits as the great inquest between the State and the citizen." From the foregoing it is manifest that a grand jury is inherently a body of inquisition empowered to make full and diligent inquiry into public offenses triable within the county. This idea is carried out in the provisions of the Penal Code. Section 920 places the duty of investigation with the grand jury, and demands that this body not only hear and weigh incriminating evidence, but that it shall hear evidence which it may have reason to believe will explain

or clear away any pending charge. Section 922 again places upon the grand jury the duty of investigating a charge where any member has reason to believe that a public offense has been committed.

The appellant concedes, as he must, the foregoing. Thus conceding, he would limit any report of the grand jury to an indictment, presentment, accusation or an express report ignoring the charge. In other words, appellant argues that when the commission of a public offense is being inquired into or investigated the power of the grand jury is limited to a definite charge, whether by indictment or otherwise, against the person being investigated; that if the grand jury does not find sufficient evidence to indict, the power of the body terminates and any act thereafter is in excess of jurisdiction. We think this too narrow a construction to be placed upon the powers of a grand jury. As a matter of routine, if nothing further, the power to investigate includes as an integral part thereof the right and duty to report the result of such investigation. The duty of a grand jury is to protect the citizen against unfounded accusation. (*Matter of Tyler, supra.*) Such a duty, coupled with the power of investigation, almost demands completeness of disclosure on matters investigated. It seems futile to attempt demonstration of the obvious. Law and common sense combine to compel the conclusion that, if a grand jury is authorized and bounden to inquire of public offense, a necessary element of this power must be the power and duty to disclose the result of the inquiry.

Coming then to the instant case as disclosed by the complaint: a human being had been killed. Murder is the highest offense known to the law and every killing may disclose facts going to constitute a crime. The man had been killed in a boxing contest, which contest was held under sanction of the statute. It is conceded that the grand jury was empowered to investigate the killing. Given a death in a boxing contest, it became of primary importance to inquire the conditions under which the contest was held. The Penal Code declares that all persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense or aid and abet in its commission, or, not being present, have advised and encouraged its commission, are

principals in any crime so committed. (Pen. Code, sec. 31.) So, therefore, an investigation into a death resulting from an alleged boxing contest, would present an almost unlimited field of inquiry. It would present for examination not only the principals to the contest, but likewise the promoters, seconds, referee, boxing commissioner and also the regulations or laws under which such a contest was held. Given a homicide, the grand jury upon investigation must find whether or not a public offense had been committed. They were compelled, under the statute, to hear and consider evidence which would explain the death. What an inane and lifeless body a grand jury would be if the limit of its power in case no indictment were returned were complete silence or a formal report of two words—"charge ignored". Without further discussion, we conclude that the report before us did not involve any person or subject beyond the scope of legitimate inquiry. Thus holding, we approach more closely the questions presented by appellant.

The first question as stated by appellant is as follows: Did the grand jury in making the statements against appellant act in excess of its powers and beyond its jurisdiction? Our answer is in the negative and the reasons therefor appear hereinbefore. The second question follows: Is the report of a grand jury, upon matters properly cognizable by it, privileged? The answer must be in the affirmative. Whatever the rule may be elsewhere, and regardless of the persuasive force of contrary contention, the rule in this jurisdiction is well settled. (*Turpen* v. *Booth, supra; Pickett* v. *Wallace,* 57 Cal. 555; *Going* v. *Dinwiddie,* 86 Cal. 633 [25 Pac. 129]; Pen. Code, sec. 927.) Indeed, the authorities seem to go further than it is necessary for us to go here. There is abundant support in precedent and authority for the principle that the privilege of a grand jury and a grand juror is absolute, while here we simply hold that the privilege exists where the alleged libelous matter is pertinent to the matters or persons under investigation. We do not pass upon the question of absolute privilege, but we do expressly refrain from limiting the privilege. Without extended quotation, reference may be had to the following authorities: *Houghton* v. *Humphries,* 85 Wash. 50 [147 Pac. 641, L. R. A. 1915E, 1051]; *Sidener* v. *Russell,* 34 Ill. App. 446; *Hunter* v. *Mathis,* 40 Ind. 356. In the last-

cited case it is said: "Few persons would be willing to act as grand jurors, if, upon the testimony of their fellows or others who are entrusted with the performance of duties in connection with their deliberations concerning the manner in which they discharged their duties . . . , they would be liable to be subjected to an action and to the payment of damages. Doubtless, if we should depart from the rule which has come down to us approved by the wisdom of ages, we should soon appreciate more fully the wisdom of the rule and the reasons upon which it is founded. Let it be conceded that grand jurors are sometimes influenced by improper motives, which it is believed is not often the case, and still the evils which would result from any other rule would be far more frequent and pernicious than those resulting from this."

The announced principle behind the doctrine of privilege is that such a rule is not for the protection or benefit of any individual but for the benefit of the public, to whose interest it is that judicial functions should be exercised with independence and without fear of consequences. Appellant has submitted his appeal limited to the two questions noted.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 20, 1933.