STATE *v.* WILSON *et al.*

(*Nashville.* December Term, 1905.)

1. **PERJURY.** Presentment for, joining two defendants, is bad for duplicity.

A presentment charging two defendants jointly, and in the same count, with the crime of perjury, is bad for duplicity.

Case cited and approved: State v. Roulstone, 3 Sneed, 108.

2. **GRAND JURY.** Statutes granting inquisitorial powers to, strictly construed.

The inquisitorial power of the grand jury was unknown to the common law, and it exists in this State with respect to any given offense only when expressly conferred by statute, and such statutes, being in derogation of the common law, are construed strictly.

Cases cited and approved: State v. Smith, Meigs, 99; Harrison v. State, 4 Cold., 195; State v. Lee, 87 Tenn., 116.

Case cited and distinguished: Glenn v. State, 1 Swan, 19.

3. **SAME.** Same. No inquisitorial power in respect of violation of liquor dealer's oath.

The crime of perjury committed by violating the oath required as a prerequisite to the issuance of a license to retail spirituous or vinous liquors is not within the meaning of that section of the Code which authorizes the grand jury to send for witnesses whenever they, or any of them, suspect a violation of the laws against "gaming" or "tippling."

Code cited and construed: Secs. 993, 6781, 7046 (S.); secs. 860, 5668, 5912 (M. & V.); secs. 691, 4858, 5087 (T. & S. and 1858).

Act cited and construed: 1865, ch. 29.

Cases cited and approved: Harney v. State, 8 Lea, 113; Dunnaway v. State, 9 Yerg., 350; Sanderlin v. State, 2 Humph., 315.

State v. Wilson.

4.  CODE OF 1858.  In construction of, may look to original statute in doubtful cases.  Omitted provision inoperative, when.
    A general rule in relation to the construction of the Code of
    1858 is that, in doubtful cases, it will be presumed that it was
    not intended to change, but only to revise or compile, the old
    statutes, and a statute in existence prior to the Code may be
    looked to in such cases; but where an important provision
    of the statute has been entirely omitted, it is wholly inoperative.

    Case cited and approved:   Tennessee Hospital v. Fuqua, 1 Lea,
    611.

5.  SAME.  Same.  Same.  Case in judgment.
    Section 4858 of the Code of 1858 (sec. 5668, M. & V. and sec. 6781,
    Shan.), providing that any person who violates the liquor dealer's oath shall be guilty of perjury, was taken from sec. 4,
    ch. 90, Acts 1845-46, entitled, "An Act to tax and regulate
    tippling and tippling houses," wherein inquisitorial power over
    all violations of the act was expressly granted to the grand
    jury; but the Code of 1858 omits the grant of inquisitorial
    power in respect of statutory perjury as conferred by said
    Act of 1845-46.

    Held:  That such omission from the Code of 1858 was the work
    of the legislature, and not merely an inadvertence of the compilers, and such omitted provisions is wholly inoperative.

    Code cited and construed:   Sec. 6781 (S.); sec. 5668 (M. & V.);
    sec. 4858 (T. & S. and 1858).

    Act cited and construed:   1845-46, ch. 90.

FROM DAVIDSON.

APPEAL from Criminal Court of Davidson County.—
W. M. HART, Judge.

State v. Wilson.

PITTS & MCCONNICO and W. C. CHERRY, for Wilson ·et al.

ASSISTANT ATTORNEY-GENERAL FAW, for the State.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

This is a presentment against the defendants, charging them jointly and in the same count with the crime of perjury. It is charged in the presentment that "Matt Wilson and Tom Russell heretofore, to wit, on the — day of March, 1903, unlawfully, feloniously, willfully, deliberately, maliciously, absolutely, and corruptly swore falsely to a certain material matter as follows: The said Matt Wilson did procure and obtain on November 17, 1902, a certain license to sell and tipple spirituous, vinous, and fermented liquors in a certain house at the corner of College street and Public Square, in the city of Nashville and county aforesaid. Said license was regularly and duly issued by and procured from P. A. Shelton, the regularly elected and qualified clerk of the Davidson county court; he, the said clerk, then and there having the power to issue said license. At the time of the issuance of said license by the said clerk, he, the said Russell, being then and there an agent of and connected with said Wilson in said business, regularly and duly swore to a certain oath before J. E. Shelton, a regularly appointed and qualified deputy clerk of said court; said oath being material and necessary to

the issuance of said license, and the said J. E. Shelton, deputy clerk as aforesaid, having lawful authority to administer said oath, which is as follows:

" 'I do solemnly swear or affirm that I will not, under the license I am about to obtain, knowingly permit or connive at any gambling for money, or any other valuable consideration, in the house in which I am retailing spirits, or in any other place, of which I may have control, either directly or indirectly, and if any person should game or bet to my knowledge (and I will exercise due diligence to know) I will give information thereof to the grand jury of my county at the next term of court.

" 'I will not sell to minors contrary to law, so help me God.

" '[Signed.]   MATT WILSON,

" 'TOM RUSSELL.

" 'Sworn to and subscribed before me this 17th day of November, 1902.

" 'J. E. SHELTON,

" 'Deputy Clerk of Davidson County Court.' ''

It is then charged that after the said Matt Wilson and Tom Russell had taken said oath, as aforesaid, to wit, on the — day of March, 1903, while doing business under said license in said house as aforesaid, and in violation of said oath, they, the said Matt Wilson and Tom Russell, unlawfully, feloniously, knowingly, and willfully did permit and connive at certain gambling for money and other valuable considerations in said

house in which said liquors were then and there being retailed under and by authority of said license as aforesaid.

"So the grand jurors aforesaid do present and show on their oath aforesaid that the said Matt Wilson and Tom Russell, on the day and year aforesaid, in the county aforesaid, by means of the false swearing aforesaid, were guilty of unlawful, felonious, willful, deliberate, premeditated, malicious, absolute, and corrupt perjury, to the evil example of all like offenders and against the peace and dignity of the State."

This presentment was found at the June term, 1903, of the criminal court of Davidson county. And at the January term, 1906, the following entry appears upon the minutes:

"Thereupon this cause was heard by the court on the following motion of defendants to quash, viz.: 'In this cause the defendants demur to the presentment returned by the grand jury against them, and move to quash said indictment upon the following grounds: (1) The grand jury possesses no inquisitorial power with reference to the offense charged in the indictment, and no prosecutor appeared in the case, and the name of the attorney-general is not signed thereto. (2) Said presentment charges no offense under the laws of this State, in that it does not specify any game of chance that was carried on or prosecuted by anyone within said house. It does not give the name of any game of chance so played or carried on at said house, and in undertaking to specify

the offense charged it states the legal conclusions of the draftsman and not the facts which constitute the offense. (3) Said presentment is bad for duplicity, because two or more defendants cannot be jointly indicted in the same count or jointly presented in the same count, for the offense with which these defendants stand charged. (4) Said Tom Russell as the agent of the defendant Wilson was not required by law to take any oath, and cannot be guilty of any offense under the statutes of this State for the breaking of the oath set out in the presentment. (5) The oath under which the presentment was returned is obnoxious and unconstitutional class legislation. (6) Said act is unconstitutional because it enacts a cruel and unusual punishment. (7) Said act is void because it provides no penalty, and a promissory oath cannot be perjury. Wherefore defendants pray judgment, and that they go hence.'

"Upon argument of counsel, and due deliberation whereof, the court is of opinion that the motion to quash is well made, and therefore quashes the presentment herein and orders that defendants go hence."

The State appealed, and has assigned the action of the court as error. This presentment is based upon section 993 of Shannon's Code (section 691 of the Code of 1858), as follows: "License [for selling liquors] may be granted to a person competent to take the same, upon the following conditions: . . . (3) That he [meaning the applicant for the license] and in case of a partnership that all the members thereof take and subscribe

the following oath," which has already been set out above and need not be repeated here.

By section 6781 of Shannon's Code (section 4858 of the Code of 1858), it is provided: "6781 (4858). Any person who, after having taken out a license, to retail spirituous or vinous liquors, violates the oath required previous to the issuance of his license, is guilty of perjury."

Sections 6697 and 6698 of Shannon's Code (sections 4793 and 4794 of the Code of 1858) define the offense of perjury, and fix its punishment at confinement in the State prison for a period of not less that three nor more than fifteen years.

The first fatal infirmity in this presentment is found in the fact that it jointly charges two defendants in the same count with the crime of perjury. In other words, the presentment is bad for duplicity. The offense charged may, of course, be committed by the defendants severally; but in the nature of things there can be no concurrence in the commission of the same act of perjury at the same time by two separate and distinct individuals.

In *State* v. *John Roulstone,* 3 Sneed, 108, it appeared that the defendants were jointly indicted in a single count for the offense of uttering obscene language in the presence of the public. The trial judge quashed the indictment for duplicity, and on appeal the judgment below was affirmed. This court, in considering an analogous question, said:

"There can be no doubt as to the correctness of the judgment, according to the authorities. The indictment is bad for duplicity. Two may be severally, but not jointly, guilty of uttering the same abusive word. If both speak the words at the same or different times, still the offense of each would be distinct, and they could not be joined in the same count. Torts are in their nature several, and each offender must answer for his own individual crime; yet, where the acts are such in their nature that several may join in their perpetration, they may be proceeded in jointly. Of this character are homicides, trespasses, larcenies, riots, and all others which admit of the agency of several in their commission. All such offenders may be either jointly or separately prosecuted. Archb. Cr. Pr., 96.

"But in that class of cases in which but one can act, two or more cannot be joined in the charge. Two cannot be guilty of the same act of perjury, barratry, and the like offense, because the act which constitutes the offense must in its nature be several and personal [citing Chitty and Archbold].

"In perjury, as well as the offense of obscenity, the crime is committed by words spoken, and the same words uttered by one cannot be possibly applied to those which proceeded from another. If two or more be guilty, it must be by separate distinct acts. There can be no unity in the act which constitutes the crime. Each offender has to answer for himself and alone, and not for or with another."

The trial judge was therefore correct in holding this presentment bad for duplicity.

The next question arising on the record is in respect of the inquisitorial power of the grand jury with reference to the offense charged in the presentment.

As already seen, the presentment was not founded upon the personal knowledge of any one of the grand jurors, but upon the testimony of witnesses summoned before said grand jury at its own instance. In *State* v. *Lee*, 87 Tenn., 116, 118, 9 S. W., 426, 427, this court, in considering the inquisitorial power of the grand jury, said:

"The extent of this investigation, however, is not unlimited in all cases. It is to be determined by the offense itself and the law relating thereto. If it is an offense of which the legislature has given the grand jury inquisitorial power, witnesses may be sent for and examined, and upon their testimony a presentment may be based; but, if it is an offense with respect of which inquisitorial power has not been especially granted by statute, the investigation must be confined to the grand jurors themselves, and in such case they can make a lawful presentment only upon knowledge or information possessed within themselves. . . .

"The inquisitorial power of the grand jury was unknown to the common law, and it exists in this State with respect to any given offense only when expressly conferred by statute. The offense charged in the presentment before us, not having been embraced in any statute conferring such power, cannot, therefore, be law-

fully presented upon the testimony of witnesses called and examined under the mistaken assumption of the existence of such power."

It is conceded that no inquisitorial power is expressly granted in the statute to the grand jury for the investigation of charges of perjury; but the insistence on behalf of the State is that this offense may be investigated by the grand jury under the inquisitorial power conferred in cases of gaming and tippling. The argument is that the breach of the preliminary oath by those engaged in selling liquor by retail is denounced by the statute as perjury, and, since it was committed by allowing gaming on the premises of the saloon keeper, it falls under the inquisitorial power of the grand jury touching cases of gaming; and it is especially contended that it is embraced in the inquisitorial power of the grand jury in cases of tippling, since the statutory offense of perjury was committed in connection with tippling.

It is shown by counsel that the only provisions of the Code of 1858 granting to the grand jury inquisitorial power are embraced in section 5087: "The grand jury shall send for witnesses whenever they or any of them suspect a violation of the laws against (1) gaming; (2) taking tolls at turnpikes, or toll bridges, not opened according to law; (3) illegal voting; (4) tippling; (5) disturbance of worship; (6) injuries to public buildings."

Since the adoption of the Code of 1858, the grand jury has been given inquisitorial power over many other of-

State v. Wilson.

fenses, which are enumerated in section 7046 of Shannon's Code.

As illustrating the strictness of construction of the inquisitorial power granted to the grand jury with respect to certain designated offenses, it being conceded that such power is in derogation of the common law, several cases may be cited. In *State* v. *Smith,* Meigs, 99, 33 Am. Dec., 132, it appeared the defendant was indicted for betting on an election and no prosecutor was marked upon the indictment. The presentment was found upon evidence of witnesses sent for by the grand jury. In that case it appeared that by Acts 1824, c. 5, sec. 2, grand juries were authorized to send for witnesses to give evidence of unlawful gaming, and such witnesses were required to give evidence of any offense that might be known to them against the statutes to suppress gaming. By Acts 1823, c. 25, sec. 2, betting on an election was declared to be a misdemeanor, and the persons guilty thereof subject to punishment, as in cases of betting on any games of hazard, by the laws then in force.

The court held that betting on an election was not gaming within the meaning of the statute, and hence the grand jury had no inquisitorial power in respect of this offense.

In *Harrison* v. *State,* 4 Cold., 195, there was a presentment against the plaintiff in error for running a horse along a public road contrary to the form of the statute. The plea in abatement averred that the presentment was

not founded upon the knowledge, evidence, or information of any member of the grand jury, but upon the evidence and information of certain witnesses who were examined and gave evidence without authority of law. It appeared that by section 4882, Code 1858, "all persons running, or aiding or abetting in running, any horse race in or along any public road in the State, or betting thereon, should be subject to all the penalites of unlawful gaming." By section 5087, Code 1858, the grand jury was given inquisitorial power to send for witnesses whenever they or any of them suspected a violation of the laws against gaming, etc. The court held that "the provisions of this statute were in derogation of the common law, and could not, therefore, be extended beyond the expressed provisions of the statute itself [citing *Glenn* v. *State,* 1 Swan, 19]. Now, is running a horse race along the public road within the meaning of the word 'gaming' used in the statute? We think not, at least so far as to authorize the grand jury to send for witnesses, or, after they were before them, to find this presentment upon their evidence. . . . Running a horse race on a public road, when there is no betting or wager, being, as we have seen, a substantive offense, does not, in our opinion, fall within the meaning of gaming as declared in our statute." It has been supposed that the case of *Glenn* v. *State,* 1 Swan, 19, is in opposition to these views. That was a presentment for retailing liquor without license in violation of the act of 1846. That act expressly granted inquisitorial power

with reference to a number of offenses therein mention-
ed, including the violation of an oath taken preliminary
to obtaining a liquor license.   Section 13, p. 157, c. 90,
Acts 1846, as it existed before the Code of 1858, was as
follows: "Sec. 13.   That in all cases arising under the
provisions of this act, the attorney-general may file bills
of indictment *ex officio,* and it shall be the duty of the
grand jurors to send for witnesses in all case in which
they, or either of them, may suspect a violation of this
act and it shall be the duty of the judges of the circuit
and criminal courts to give this act in charge."

The inquisitorial power granted by the act of 1846,
it will be observed, is expressly confined to a violation
of that act.   But it appears from an examination of the
statutes that section 13, c. 90, p. 157, Acts 1845-46, was
not embodied in the Code of 1858, and is not now upon
the statute book.

The opinion of this court in *State* v. *Smith,* Meigs,
99, 33 Am. Dec., 132, and *Harrison* v. *State,* 4 Cold., 195,
noticed, supra, were based on the act of 1824, while the
case of *Glenn* v. *State,* 1 Swan, 19, decided in 1851, dealt
with the act of 1846, which was not carried forward into
the Code of 1858.   And thus the inquisitorial power
of the grand jury in respect of statutory perjury under
the act of 1846 is wholly eliminated.

In *Harney* v. *State,* 8 Lea, 113, this court said: "A
tippling house is a place where spirituous liquors are
sold and drank in violation of law (Bouv. Law Dict.) ;
or, as defined by this court under our statute, a place

where spirituous liquors are sold without license in less than a quart, or in any quantity to be drunk at the place (*Dunnaway* v. *State,* 9 Yerg., 350; *Sanderlin* v. *State,* 2 Humph., 315). The word 'tipple' in the act of 1877 means to sell to be drunk at the place of sale."

It will be observed that the offense has a well-understood meaning, and it is difficult to perceive how a statutory offense of perjury can be brought within the definition of tippling, so as to authorize the grand jury to exercise its inquisitorial power with respect to it. The offense denounced by the statute is made a highly penal felony, and it would be a great stretch of judicial construction to hold that this offense may be investigated by the grand jury under its inquisitorial power, either as to gaming or tippling. It is said, however, in behalf of the State, that section 6781, Shannon's Code (section 4858, Code of 1858), providing that any person violating this oath is guilty of perjury, was taken from section 4, c. 90, p. 155, Acts 1845-46, entitled "An act to tax and regulate tippling and tippling houses," wherein inquisitorial power in this class of perjury cases was expressly granted to the grand jury. The form of oath is set out in section 3 of that act. This oath was modified by chapter 29, p. 48, Acts 1865, entitled "An act to modify the oath prescribed for liquor dealers." The first section of that act is: "That the oath prescribed in article 6, section 691 of the Code (1858) be and is hereby amended as to read as follows, to wit." The oath is prescribed in Shannon's Code, section 993, subsec. 3, It is

State v. Wilson.

argued in behalf of the State that, if the grand jury had inquisitorial power (as it did) over cases for a violation of the act of 1845-46, sec. 691, Code 1858, and its cognate sections, such power would not be destroyed by the mere amendment of that act prescribing a different form of oath by chapter 29, p. 48, Acts 1865. In support of this contention *Tennessee Hospital* v. *Fuqua,* 1 Lea, 611, is cited, wherein this court, speaking of the Code of 1858, said: "The declared object of the legislature in the appointment of the revisers, whose work was embodied in the Code, was, in the language of its resolution, 'to revise and digest' the existing statutes, not to alter them. And this court has accordingly, in view of this fact, said that one general rule in relation to the construction of the Code is that in doubtful cases it will be presumed that it was not intended to change, but only to revise or compile, the old statutes. It is obvious that the omission of a clause in the re-enactment of a statute into a compilation might be inadvertent, and no great stress can be laid on the fact."

Conceding this to be the law with reference to the construction of the Code of 1858, the query arises, is this a doubtful case? We are asked to hold that a statutory offense, in derogation of the common law, erected by the act of 1845-46, may be investigated under the inquisitorial power of the grand jury, under the grant of a power which was entirely omitted from the Code of 1858. The Code of 1858 simply confers inquisitorial power in cases of gaming and tippling, and wholly omits

State v. Wilson.

the grant of such power in respect of statutory perjury conferred by the act of 1845-46. It was, therefore, the work of the legislature and not of the compilers in omitting this grant of power from the Code of 1858. The rule is that the statute in existence prior to the adoption of the Code may be looked to in doubtful cases; but where an important provision of the statute has been entirely omitted, it is of course wholly inoperative.

For the reasons stated and without deciding other questions, the judgment of the criminal court in quashing the presentment is affirmed.