In the Matter of the Application of JAMES E. HEALY, Petitioner, to Set Aside, Quash and Have Stricken from the Records of This Court the Presentment Made by the Grand Jury at the April Term of the County of Queens, 1936, in a Proceeding Entitled " In the Matter of the Investigation of Charges Made by One Fred A. Staab."

County Court, Queens County, January 7, 1937.

*Sylvan Schwartz*, for the petitioner.

*Charles P. Sullivan, District Attorney* [*John H. W. Krogmann* of counsel], in opposition.

COLDEN, J. This is an application by James E. Healy for an order to quash and set aside a certain presentment made by the grand jury of the county of Queens at the April, 1936, term of the County Court of Queens county.

The presentment reads: " We, the members of the April, 1936, Grand Jury, have made a thorough and exhaustive investigation of the complaint of Fred A. Staab, an Assistant Deputy Sheriff of Queens County, concerning an undated resignation signed prior to his appointment. We have examined as witnesses Mr. Staab and every person mentioned by him in his complaint, and others whom we believed might be able to clarify the matter under consideration.

" We find that there is no evidence sufficient to warrant the finding of an indictment or indictments, either under section 775 of the Penal Law, or otherwise.

" We do believe, however, that Mr. James E. Healy, the vice-chairman of the Queens County Committee, attempted to inaugurate a scheme whereby all persons who were to be appointed to non-civil service positions in the county government, would be required to sign resignations prior to such appointments.

" There was evidence, indeed, that two persons, at Mr. Healy's solicitation, signed such resignations. We find that such resignations were without value, as in each case the appointing power had the authority to discharge the individual without resignations.

" We condemn this practice as a most vicious one and respectfully urge that section 775 of the Penal Law be amended to make it a crime.

" We respectfully ask that a copy of this presentment be forwarded to the Governor of the State of New York and to the leader of the respective Houses of the Legislature.

" Respectfully submitted

" WALTER M. JOHNSON,

" *Foreman.*"

" ALLAN FOX, *Clerk.*"

In addition to such facts as appear in the presentment itself, the affidavits and briefs submitted on this motion furnish to the court some additional facts. The petitioner states that he has been publicly held up to ridicule and scorn among his friends and acquaint-

ances and other citizens in the county and community in which he resides; that prior to this presentment he has held various high positions in which confidence and trust were imposed upon him; that he was in the employ of the government of the United States for many years as Acting Deputy Prohibition Administrator and Chief Investigator in the Department of Justice; that thereafter the petitioner was secretary to a judge of this court, and that at the present time he is executive secretary to the president of the board of aldermen of the city of New York; that the petitioner was never subpœnaed or called before the grand jury to be examined in this matter, or to have his character, standing and record inquired into; that the petitioner was a member of the armed forces of the United States during the World war and has received from the government of the United States the Distinguished Service Cross, the Purple Heart with the Oak Leaf Center, and the Conspicuous Service Cross, the highest award of the State of New York, in recognition of his services in the World war. That upon his honorable discharge from the United States army he entered the Federal service in a civilian capacity and during such service over a number of years has received more than thirty recommendations for such service. The petitioner urges upon this application that the presentment is illegal; has no foundation or basis in law and that the grand jury was without right, power or authority to file this presentment against the petitioner.

In opposing this view the district attorney maintains that " it would appear that in the case of one holding office of a public or quasi-public character, section 260 of the Code of Criminal Procedure would give the right of investigation or inquiry to a grand jury, and that such right inferentially includes the right to make report resulting from such inquiry."

The question involved in this application is as to whether a grand jury has the right, power or authority to hand up a presentment where the evidence considered by the grand jury does not warrant or justify the finding of an indictment and, in the event that such a presentment may be submitted, whether such presentment may contain the censure of a public official, or of an individual.

The powers of the grand jury, in so far as the statutes are concerned, applicable to this matter, are found in section 252 of the Code of Criminal Procedure, which provides: " The grand jury has power, and it is their duty, to inquire into all crimes committed or triable in the county, and to present them to the court;" in section 258 of the Code of Criminal Procedure, which provides: " The grand jury ought to find an indictment, when all the evidence before them, taken together, is such as in their judgment would,

if unexplained or uncontradicted, warrant a conviction by the trial jury;" and in section 269 of the Code of Criminal Procedure, which provides: " If twelve grand jurors do not concur in finding an indictment, the depositions (and statements, if any) transmitted to them, must be returned to the court, with an endorsement thereon, signed by the foreman, or by the grand juror designated to act as foreman during the temporary absence or disability of the foreman, to the effect that the charge is dismissed."

The Code of Criminal Procedure further provides (§ 273) that " All the forms of pleading in criminal actions, heretofore existing, are abolished; and hereafter, the forms of pleading, and the rules by which the sufficiency of pleadings is to be determined, are those prescribed by this Code."

The next section of the Code (274) provides that " The first pleading on the part of the people is the indictment."

The petitioner, therefore, urges that, in view of the provisions of the Code of Criminal Procedure above quoted, the grand jury had no power or authority to hand up the presentment; that the old common-law presentment is no longer applicable to our system of jurisprudence and that particularly, in view of the express provisions of sections 273 and 274 of the Code of Criminal Procedure, such a presentment is illegal and void.

On the other hand, the district attorney contends that the provisions of section 260 of the Code of Criminal Procedure give express authority for an investigation by the grand jury and a presentment following such investigation. Section 260 of the Code of Criminal Procedure designates three classes of matters into which the grand jury must inquire. They are: " 1. Into the case of every person imprisoned in the jail of the county, on a criminal charge and not indicted; 2. Into the condition and management of the public prisons in the county; and 3. Into the willful and corrupt misconduct in office, of public officers of every description, in the county."

This section of the Code of Criminal Procedure was the subject of judicial determination by the Appellate Division of this department in *Matter of Jones* v. *People* (101 App. Div. 55). In that case the grand jury of Nassau county in December, 1903, made a presentment to the Supreme Court in which the board of supervisors of Nassau county and two men who had acted as clerks of the board were censured for not performing the duties of their respective offices in a manner to meet the approval of the grand jury. The individuals thus censured petitioned the County Court of Nassau county, asking that the presentment be set aside and quashed on the ground that such presentment was without

authority of law. The prayer of the petitioners was denied by the County Court, and the petitioners appealed to the Appellate Division where the decision of the County Court of Nassau county was sustained, the prevailing opinion having been written by Mr. Justice JENKS, with whom Justices HIRSCHBERG and HOOKER concurred; Mr. Justice WOODWARD read a dissenting opinion, parts of which have been frequently quoted in other cases on this subject, reference to which will be made subsequently, and Mr. Justice BARTLETT voted to dismiss the appeal on the ground of want of jurisdiction to entertain it. Mr. Justice JENKS in the prevailing opinion referred to section 260 of the Code of Criminal Procedure, and also to section 261 which provides that the grand jurors " ' are also entitled to free access, at all reasonable times, to the public prisons, and to the examination without charge, of all public records in the county;' " and then stated, " We may assume that these powers are conferred for some purpose. Official inquiry intends either official action or official report. As such powers are limited to inquiry, and the grand jury has no executive or administrative authority in the premises, the result of any inquiry must be report or statement which shall call attention to the wrong. The grand jury can but report to the court to which it was returned and by which it is discharged. Such reports are commonly termed presentments. The Standard Dictionary gives this as a definition of presentment: ' 4. Law. (1) A report made by a grand jury, on their own motion, either on their own knowledge or on evidence before them, concerning some wrongdoing, and presented to the court, usually as the basis for an indictment ' * * *. Hochheimer on the Law of Crime and Criminal Proceedings says: ' Presentment in a large sense of the term includes every proceeding of a grand jury. 2 Inst. 739.' I think therefore that any final finding upon the exercise of these inquisitorial powers may be called a presentment, and that it may be regarded as final and not improper because an indictment cannot or does not follow it. While it is true that the Code of Criminal Procedure does not in terms provide for a report as a result of this inquiry or directly provide for a presentment, yet it is significant that the term is used in contradistinction to an indictment in section 250, which reads as follows: ' The grand jury must appoint one of their number as clerk, who is to preserve minutes of their proceedings (except of the votes of the individual members on a presentment or indictment), and of the evidence given before them.' Such inquiry as is required by sections 260 and 261 of the Code of Criminal Procedure may reveal misconduct, inattention or shortcomings of public officials, and the report or presentment might be colorless or ineffective

unless it specified individual delinquencies. I think that in such a case the grand jury can properly point out those individuals who as officials are deemed responsible, and that the presentment may stand though it be not followed by an indictment. It may be pertinent to call attention to the fact that inefficiency, carelessness or neglect may require correction and yet not justify indictment, and to the fact that not all willful or corrupt misconduct in office can be presented in the first instance by indictment * * *. It is true that accusation without opportunity to answer in the forum is a bitter hardship if not intolerable * * *. I think that if under the guise of a presentment the grand jury simply accuse, thereby compelling the accused to stand mute, where the presentment would warrant indictment so that the accused might answer, the presentment may be expunged, but I do not think that a presentment as a report upon the exercise of inquisitorial powers must be stricken out if it incidentally point out that this or that public official is responsible for omissions or commissions, negligence or defects."

The dissenting opinion of Mr. Justice WOODWARD, in an exhaustive analysis of the authorities, takes a view which has found favor in many subsequent decisions. In this dissenting opinion it is stated, " This idea runs through all of the authorities, which I have been able to discover, that the jurisdiction of the grand jury over individuals must depend upon the fact that a crime or offense has been committed against the public. (See *Beavers* v. *Henkel*, 194 U. S. 73, 84.) An offense is a breach of the laws established for the protection of the public, as distinguished from an infringement of mere private rights, a punishable violation of law, a crime. (21 Am. & Eng. Ency. of Law [2d ed.], 830, 831, and authorities cited in note.) If there has been no crime or offense, the grand jury, designed for the protection of the citizen, has no right to create an offense unknown to the law for the purpose of administering punishment by way of censure, for this is a ' government of laws and not of men,' to quote the preamble of the Constitution of Massachusetts, and the language of Chief Justice MARSHALL in *Marbury* v. *Madison* (1 Cranch, 163). The rule is not different because the accusation takes the form of a presentment rather than of an indictment, which, as I have already suggested, are synonymous terms as used in our jurisprudence, and particularly so since the adoption of our Code of Criminal Procedure * * *. If the acts charged do not constitute a crime, then there is no indictment before the court, and the petitioners clearly have a right to be relieved of the odium of a judicial censure, where

the document in which such censure is contained is a mere impertinence, without authority of law."

So far as I have been able to ascertain, the case of *Matter of Jones* v. *People* (*supra*) is the only case which upholds the right of the grand jury to hand up a presentment which censures public officials for alleged willful and corrupt misconduct in office, as suggested in section 260 of the Code of Criminal Procedure. On the other hand, there are numerous cases which hold to the contrary.

In *Matter of Wilcox* (153 Misc. 761) the grand jury of Monroe county on October 19, 1934, made a report to the Supreme Court in which they censured the inspectors of election of the fourth ward of the city of Rochester with reference to the conduct of the primary election of the preceding September. The report, at some length, details some of the alleged occurrences complained of and makes certain recommendations with reference to the removal of the inspectors of election, and for certain other matters deemed by the grand jury to be important. Mr. Justice KNAPP, in his opinion, says: " The nature of this proceeding brings squarely before the court the question as to the authority of this grand jury to make the report it did or any of a similar character * * *. Nowhere in the law that I have been able to find is there a provision authorizing a report to be made to the court by a grand jury upon any matter other than by an indictment. It may be said inferentially as a matter of argument that a direction to inquire presupposes a direction to report, but so far as direct authority is concerned in the Code of Criminal Procedure for the making of such a report it does not exist. * * * The cases in this State upon the question here involved are not uniform and cannot be reconciled. Only one case exists in the State, which will be hereafter referred to, that carries with it a decision of an appellate tribunal. The court of last resort has not spoken upon this question." Then follows a very exhaustive and learned discussion of the cases not only in this jurisdiction, but of judicial decisions outside of this State, as well as the views of textbook writers, after which the court held that the grand jury had exceeded the power conferred upon them by statute, and granted the motion to strike out the report of the grand jury. It is to be observed that in the case last cited (*Matter of Wilcox, supra*) the name of the petitioner was not set forth in the presentment of the grand jury; that merely the office which he held was designated.

In *Matter of Woodbury* (155 N. Y. Supp. 851) the grand jury of Niagara county on October 25, 1915, handed up a presentment which censured the police board of Niagara Falls " for the lax

manner in which the Excise Law appears to have been enforced in the City of Niagara Falls."

Mr. Justice MARCUS in granting the motion to expunge from the records of the Supreme Court, and to set aside and quash the presentment of the Niagara county grand jury, among other things, said: " It is unnecessary, in my determination of this question, to decide whether ' presentment ' and ' indictment ' are synonymous. Much has been learnedly written on this subject, and the weight of authority still seems to be that the grand jury have a right to make presentments, even though they be not followed by an indictment; but the courts seem to be equally emphatic in insisting that a presentment cannot be used by the grand jury merely as a guise to accuse and thereby compel a person to stand mute, if the presentment would warrant an indictment so that the accused might answer, and that when a presentment is merely a guise used by the grand jury to accuse, the presentment should be expunged from the record."

In *Matter of Funston* (133 Misc. 620) the grand jury of Schenectady county on February 19, 1929, made a presentment to the Supreme Court charging, in substance, that there was a willful and deliberate failure to enforce and maintain law and order in the city of Schenectady, and that gambling and bowling and baseball pools and other forms of law breaking existed without molestation and that the chief of police of that community was directly responsible for the lawless conditions. The accused official petitioned the Supreme Court for an order quashing the presentment and expunging it from the records on the ground that it was made without lawful authority. In granting the motion of the chief of police, Mr. Justice HEFFERNAN, after considering the authorities, said, in part, " From time immemorial it has been the practice of grand juries at the conclusion of their duties to adopt resolutions and make reports on a variety of subjects. So long as this worked no injustice, they were tolerated. When the integrity of an individual is impugned and he is publicly censured without an opportunity to answer, he is justified in appealing to the court to rectify the wrong. A grand jury under the guise of a presentment must not be permitted to attack the good name of a citizen. It is unquestionably true that the public mind is impressed by the utterances of such a body. It is a grave matter to charge a public official with misconduct in office. The consequences may be very serious. In this case it cannot be seriously disputed that the emanations of the grand jury reflect on the petitioner's integrity. His official conduct is criticised, his motives are impugned and he is held out as deserving of chastisement and reprobation. Even a grand jury should not

attack with impunity the character of a citizen. Many a man of good repute in the world's ear may have his reputation blasted in this manner. I am not impressed with the argument that the members of this grand jury acted maliciously or in bad faith. Undoubtedly their motives were the purest. That, however, does not atone for the injury. A grand jury should not substitute suspicion for proof. The meanest criminal in the land is entitled to his day in court to meet his accusers face to face before he is condemned. A public official is entitled to the same consideration. It is just as important that one should be fairly accused as that he should be fairly tried. The petitioner in this case is accused of criminality. He has had no hearing, no trial, no opportunity for defense, and unless the court comes to his aid, he is left without any remedy except an appeal to the court of Mrs. Grundy. Scathing pronouncements by a grand jury are highly reminiscent of the days when the Star Chamber and the Court of High Commission cast their baleful shadows over every English home. It is as much the duty of the court to protect the innocent as it is to punish the guilty. I am clearly satisfied that the presentment of the grand jury has resulted in injustice to the petitioner, that it was made without any warrant in law, and, therefore, it should be quashed, set aside and stricken from the records."

In *Matter of Crosby* (126 Misc. 250) the grand jury of Niagara county submitted a presentment on October 30, 1925, with reference to the vice conditions in the city of Lockport, in which the mayor, the board of police commissioners and the chief of police of the city of Lockport were criticized, and the mayor and police commissioners of said city then petitioned the Supreme Court for an order striking and expunging from the records of the court the said presentment. In granting the motion to strike from the records of the court the statements which in the opinion of the court were unwarranted attacks on the honesty of the mayor and the commissioners, Mr. Justice HARRIS said, in part, " I am of the opinion that by inference section 260 of the Code of Criminal Procedure gives authority for the making of a report by a grand jury on the matters mentioned in such section, and there is excellent authority in the cases for the statement that a grand jury, in addition to presenting indictments and finding no bills, may make reports upon the matters specified, in such section, as a proper subject of inquiry by the grand jury  *  *  *  The right to make such a so-called presentment or report is to be used with the utmost caution and with due respect for the rights of individuals mentioned in such so-called presentment or report, because the individuals so mentioned have no remedy or recourse against unjust accusations

made in such a so-called presentment or report. As has been said in *Matter of Osborne* (68 Misc. 597), ' from its ancient prestige, the deliverance of a grand jury, in the form of a presentment, is calculated to impress the public mind, and a person aggrieved, who has no opportunity to answer or defend, is justified in appealing to the court to rectify a wrong, if committed.' A so-called presentment or report should present facts obtained as a result of the inquiries authorized by section 260 of the Code of Criminal Procedure."

In *Matter of Heffernan* (125 N. Y. Supp. 737) the Kings county grand jury of the February, 1909, term of the County Court, submitted a presentment criticizing the official action of certain officials of the borough government relative to public improvements, in which presentment the grand jury censured the borough officials by name, charging them with neglect of their duties and of the public interests. In granting the motion of the public officials for an order to set aside the presentment, Mr. Justice DIKE, then county judge of Kings county, among other things, said, referring to the grand jury, " they are not part of the administrative government of a great municipality. They have the fullest and amplest power to investigate, as it is their solemn and prescribed duty to do, into ' the wilful and corrupt misconduct in office, of public officers of every description in the county.' Finding any such evidence of wilful and corrupt misconduct it would be their clear duty to indict. Then the official could have his day in court, where he would receive either the condemnation which he deserved if his actions have been unlawful, or the vindication that he would desire in case he was blameless. From a grand jury obviously nothing but the fairest consideration of any questions submitted to them is expected. The Star Chamber of the olden days no longer exists, and any action on the part of a grand jury which would partake of the character of that ancient and abhorred system would not be tolerated today.

" Presentments should be made use of only when clearly necessary. Their use by the grand jury is honored more in the breach than in the observance; and in the present case it has done an injustice to public officials which, in fairness, I shall do my part to set aside."

In *People* v. *McCabe* (148 Misc. 330), Mr. Justice CUFF, in considering the effect of a presentment which had been handed up by the grand jury of Nassau county, which criticized certain officials of the city of Long Beach, said, " I can find no statutory authority for filing a presentment by a grand jury. * * *

" A presentment is a foul blow. It wins the importance of a judicial document, yet it lacks its principal attributes — the right to answer and to appeal. It accuses but furnishes no forum for a

denial. No one knows upon what evidence the findings are based. An indictment may be challenged — even defeated. The presentment is immune. It is like the ' hit and run ' motorist. Before application can be made to suppress it, it is the subject of public gossip. The damage is done. The injury it may unjustly inflict may never be healed."

In *Matter of Gardiner* (31 Misc. 364, 367, 374) the court granted a motion to set aside a presentment which criticized a public official, and during the course of the opinion the court said, in part, " While it may be observed that the court has tolerated rather than sanctioned such presentments of things general, yet the grand jury should never under cover of a presentment present an *individual* in this manner, for if it have legal evidence of the commission of the crime it should find an indictment against him upon which he could be held to answer, and if it have no such evidence, it ought, in fairness, to be silent.    *    *    *

" It is not enough to say that inasmuch as the petitioner cannot be held to answer, and as it is a mere communication between the grand jury and the court, it is ' a finished and concluded thing, an incident that is closed, *un fait accompli*,' and that therefore the court is without power to act. If that be so, the petitioner has been accused by a duly organized grand jury, on their oaths, of grave and serious offenses. He has had no hearing, no opportunity to prove his innocence, no opportunity for defense. If the court is powerless to consider this presentment or to determine whether it is well founded or not, then the petitioner is deprived of his good name, that dearest of all earthly possessions, without a trial, without a hearing, and without the slightest pretense or shadow of ' due process of law,' which hears before it condemns."

In *Matter of Osborne* (68 Misc. 597) the grand jury for the January, 1908, term of the Supreme Court, New York county, submitted to the court a presentment in which, among other things, they censured the representatives of the Attorney-General for the manner in which they had conducted certain matters before the grand jury.

A motion was made to expunge from the records of the court the presentment, and, in granting the motion, Mr. Justice GOFF, among other things, said, " It has become a custom of almost invariable occurrence that the grand jury, at the close of its term, makes a presentment on some subject on which, frequently, no evidence has been heard. This, no doubt, proceeds from the zeal of its members to promote the general welfare by calling attention to certain conditions which they believe should be remedied. So long as they are confined to matters of general interest they are regarded as harmless, even though a waste of time and effort, and

after the ephemeral notice of the day has passed they are allowed a peaceful rest. But it is very different when the motives and conduct of the individual are impugned, and he held to reprobation, without an opportunity to defend or protect his name and reputation, for it must be borne in mind that if the gentlemen of the grand jury were to meet as an association of individuals and give expression to the sentiments contained in a presentment, little attention would be paid to them, and a healthy regard for the responsibility of utterances injurious to the individual would, in all probability, restrain exaggerated and unfounded statements. The mischief arises from a prevalent belief that a grand jury making the conventional presentment speaks with great authority and acts under the sanction of the court, thereby giving to its deliverance a solemnity which impresses the mind of the public. This is a grave error. The powers and duties of a grand jury are defined by law. No matter how respectable or eminent citizens may be who comprise the grand jury, they are not above the law, and the people have not delegated to them arbitrary or plenary powers to do that, under an ancient form, which they have not a legal right to do.

" In the courts of many of the States of the Union there have been expressions of judicial opinion on this subject, and, while they vary as affected by the local jurisdiction and the particular facts and circumstances, they all agree in holding as reprehensible an attack on private individuals by grand juries under the guise of a presentment."

That there is some diversity of opinion among the decisions is apparent. Numerically, the number of decisions which condemn the submission of presentments far exceeds those which have sustained the use of presentments. As a matter of fact, as has been pointed out, the only appellate court in our State which has passed upon the question has sustained the use of presentments. (*Matter of Jones* v. *People, supra.*) Notwithstanding the splendid, well-reasoned dissenting opinion of Mr. Justice WOODWARD, I am inclined to believe that the prevailing opinion expresses the intention of the Legislature when it formulated the provisions of section 260 of the Code of Criminal Procedure. Under that section the grand jury must inquire, among other things, into the condition and management of the public prisons in the county. If the only result of inquiry with reference to the public prisons is limited to the findings of an indictment or silence on the part of the grand jury, then that subdivision of section 260 of the Code of Criminal Procedure will be almost valueless, but if the view adopted by the court in *Matter of Jones* v. *People* (*supra*) is to prevail, then very valuable and salutary results may come from intelligent investigations by grand juries.

Prison conditions may be deplorable due to overcrowding, lack of adequate sanitary facilities, the age of the buildings, and to many other factors which may contribute to such conditions, yet in no such instance might the grand jury be warranted in finding an indictment. Certain it is with the passing of time all structures become obsolete. Education and a better understanding of criminology and penology may well authorize a grand jury to submit a presentment urging the erection of modern structures conducive to a better and more enlightened treatment of prisoners. It would be most unfortunate if such valuable contributions resulting from intelligent investigations expressly directed to be made by our grand juries should be lost because of the theory that a grand jury may not hand up a presentment. So, also, it is entirely conceivable that public officials, while not guilty of criminality, may be found to be so lacking in understanding or appreciation of the duties which are part of their office that a grand jury may be discharging a very high form of public service if they report findings based upon a fair, honest and thorough investigation of all the facts. Not long since a Queens county grand jury conducted an investigation into certain charges which were made with reference to the New York Parental School. As a result of a careful and painstaking investigation a presentment was submitted to this court which did not criticize or censure any individual or individuals, but it did boldly and fairly criticize the conditions under which the institution was operated and did make certain recommendations relative to the continuance of the operation of the school or, in the event that such recommendations were not followed, that the institution be closed. The result of that presentment is that the institution is no longer operated; the taxpayers of the city of New York will be saved millions of dollars, and the great investment which the taxpayers have in the land and buildings will be placed to some beneficial use.

The advantages to the people of the State in giving power to our grand juries to investigate in accordance with the provisions of section 260 of the Code of Criminal Procedure far outweigh any consideration for the feelings of public officials who may be criticized by such grand juries. The caliber of the membership of the grand juries is a matter which lies within the control of the courts. The selection of men of experience, of integrity, of high citizenship, of courage, of honesty, and with a reputation for fair dealing, is a problem easily solved by those whose privilege and duty it is to select and determine the membership of our grand juries. And it is only fair to assume that grand juries so selected will confine their presentments to matters which are properly subject to their

consideration. Under the law of our State there is always available to the grand juries sitting at any term of court the advice of the district attorney and of the justices of the Supreme Court and the judges of the County Court.

Long ago it was said that " public office is a public trust." Any public official should at all times be willing to render promptly an account of such trusteeship. No matter what his office may be, he is but the servant of the people, and in accepting such office he must be presumed to know that his acts in office are subject to the scrutiny provided by section 260 of the Code of Criminal Procedure. If he administers his office with a high regard for the trust which has been placed upon him by those who elected or appointed him, then he need have no concern about investigation; if he fails the trust, then, of course, he should have no complaint if the interests of the people are best served by disclosing his failure to fulfill the responsibilities and obligations of the office which he has assumed.

With the foregoing principles in mind the facts of the instant case may be tested.

Section 260 of the Code of Criminal Procedure is the only provision which by any stretch of the imagination might be deemed to apply to the petitioner; that is, that the petitioner is a public official.

But, to be subject to the provisions of section 260 of the Code of Criminal Procedure, it is incumbent that the presentment should show that the investigation made by the grand jury was into the willful and corrupt *misconduct in office* of public officers of every description in the county.

An examination of the presentment describes the petitioner as " vice-chairman of the Queens County committee."

No statement is contained in the entire presentment to show any facts which would indicate that the petitioner is a public official or that the grand jury had under investigation the willful or corrupt misconduct in office of or by the petitioner. Not a single word from the beginning of the presentment to the end indicates directly or even inferentially that the petitioner is a public official, and the presentment is equally silent as to the public office which was subject to investigation. True, the presentment states that it made a thorough and exhaustive investigation of the complaint of a citizen with reference to the fact that the citizen signed an undated resignation prior to his appointment as an assistant deputy sheriff of the county of Queens. But there is nothing in the presentment or in any of the papers submitted to the court on this motion which indicates that the petitioner was ever at any time directly or indirectly connected with the office of the sheriff of the county of Queens. The presentment says that the petitioner attempted to

inaugurate a scheme whereby all persons who were to be appointed to non-civil service positions in the county government would be required to sign resignations prior to such appointments. The grand jury then proceeds to condemn this practice and urge that the Penal Law be amended to make it a crime. In the presentment the statement is made that the grand jury has examined " every person mentioned by him [the complainant] in his complaint and others whom we believed might be able to clarify the matter under consideration." Yet, according to the record, the grand jury failed to call before it the one person who could have given them testimony under oath which should have been most valuable, and that person is the petitioner, Healy.

Nor can it be said that the grand jury failed to call him lest immunity be granted, inasmuch as the presentment specifically states that there is no evidence sufficient to warrant the finding of an indictment, and that being so, the petitioner, Healy, could have been subpœnaed before the grand jury and examined extensively if the grand jury intended to examine all of the available witnesses.

The petitioner in his memorandum states specifically: " The petitioner was never subpœnaed or called before the grand jury to be examined in the matter, or to have his character, standing and record inquired into." This statement of the petitioner is not controverted by anything submitted upon this application.

The presentment designates the petitioner as vice-chairman of the Queens county committee. Both the petition and the affidavits submitted in this case are silent as to who constitute the Queens county committee, or what its functions or duties are. Certain it is that there is no allegation that it is a public office or that the vice-chairman of the Queens county committee is a public official. If the grand jurors intended to describe the Queens county Democratic committee, and, either through inadvertence or design, omitted the adjective describing the political character of the committee, the situation is not changed because, assuming for the purpose of argument that the members of the grand jury wished to infer that the petitioner was the vice-chairman of the Queens county Democratic committee, the answer to that is that holding an office in a political organization does not constitute the holder of such political office a public official.

I find nothing in the facts in this case which bring this presentment within the statute or within any of the decisions, and an examination of the briefs submitted by the district attorney indicates the weakness of the position of the grand jury when the district attorney says, as the concluding statement in his brief: " From all of the foregoing it would appear that in the case of one

holding office of a public or quasi-public character, section 260 would give the right of investigation or inquiry to a grand jury, and that such right inferentially includes the right to make report resulting from such inquiry."

All the papers submitted, as well as the presentment itself, are silent as to any public or quasi-public office held by the petitioner which is the subject of an investigation under section 260 of the Code of Criminal Procedure.

And unless it is affirmatively established that the grand jury was conducting an inquiry within the provisions of section 260 of the Code of Criminal Procedure, as suggested above, then the grand jury had no right, power or authority to submit this presentment.

In their presentment the grand jury condemns the practice of demanding resignations from candidates about to be appointed to public office. With such condemnation every right-thinking person must agree. Such practice is reprehensible. Nor does it matter that such so-called resignations are invalid, or that they are unnecessary inasmuch as the power to dismiss lies in the hands of the appointee's superiors. If such practice were permitted the thought in the mind of a person who is appointed after giving such resignation, in many cases, would be that his tenure of office is subject to the control of the holder of his resignation, and instead of giving freely and whole-heartedly of his best efforts in behalf of those whom he was appointed to serve, it is more than probable that he will seek to please whoever holds his resignation. Repugnant in every sense as is this practice to the high ideals which should characterize all public service, the recommendation of the grand jury that such practice be made a crime is entirely commendable, and it is certain that if our Legislature does so enact such a course will meet with instant approval. Had the grand jury made such recommendation without including in its presentment any reference to any individual either by name or description, there could be little room for criticism.

The difficulty here, however, is that the presentment censures not a public official for matters coming within the provisions of section 260 of the Code of Criminal Procedure, but accuses an individual as a private citizen of a course of conduct of which they disapprove, and then deprives him of one of the highest privileges of American citizenship, his right to his day in court, his right to meet his accusers face to face, to confront them with his testimony and that of his witnesses. He is compelled to stand mute. He is denied the right to examine his accusers under oath, in public where the truth or falsity of their accusations may be determined. He is denied a trial before an impartial tribunal. Under our system

of jurisprudence every man, be he the most upright or the most depraved, is entitled to such day in court. But under this presentment, the petitioner, through testimony taken in secret and kept secret by our law, has been tried and condemned. The star chamber should find no abiding place in America.

Section 389 of the Code of Criminal Procedure provides that " A defendant in a criminal action is presumed to be innocent, until the contrary be proved; and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal."

This is the law which is applicable to one who has been indicted by a grand jury under a legal indictment and brought to trial, and there, in a tribunal open to the public, the defendant meets his accusers face to face, and at last, after the test of examination and cross-examination has developed the facts, his case goes to the jury, always under the admonition that the defendant is presumed to be innocent until the contrary is established; that unless his guilt is established beyond a reasonable doubt he must be acquitted.

This is in accordance with our American system of jurisprudence, our sense of fair play, of decency, of fair dealing and square dealing.

And this same presumption of innocence is part of the protection which is afforded to those who are charged, not only as first offenders, but as second or third or fourth offenders.

In the light of the protection which is afforded those who are actually accused of crime, the unfairness of the presentment under consideration becomes apparent. It is claimed on behalf of the petitioner, and not disputed, that he heroically served his country during the World war. That for gallantry in action he has been decorated by an appreciative government. That he has had a long and honorable career in the service of the United States. That he has served in this court and that now he is executive secretary to the president of the board of aldermen of the city of New York.

A thorough investigation, such as section 260 of the Code of Criminal Procedure contemplates, should have brought these facts to the attention of the grand jury and, at least, have caused them to examine the petitioner personally as to the charges made against him. Their failure to do so, even through the use of a subpœna if necessary, indicates that their investigation was not as complete as such investigations should be. Section 257 of the Code of Criminal Procedure provides: " The grand jury is not bound to hear evidence for the defendant; but it is their duty to weigh all the evidence submitted to them, *and when they have reason to believe that other evidence, within their reach, will explain away the charge, they should order such evidence to be produced; and for that purpose, may require the district attorney to issue process for the witnesses.*"

The words of Mr. Justice CUFF, in the case of *People* v. *McCabe* (*supra*), apply with startling accuracy to this case. Substituting the word " this " for the article " a " in the first word of a sentence of Justice CUFF's opinion, it reads: " This presentment is a foul blow. It wins the importance of a judicial document, yet it lacks its principal attributes — the right to answer and to appeal."

The history of our grand jury system is one of great nobility and of service, of protection to the humble from the unwarranted accusations of the great and mighty. For a thousand years it has been in the process of magnificent development — a shield to the innocent, a sword to the guilty.

No king, no emperor, ever successfully controlled its determinations, and throughout the centuries it has protected the oppressed. In our State it holds a future of great usefulness provided it keeps within the bounds of the statutes, the decisions of our courts and to its own fine traditions placed around its activities.

To single out an individual, not by reason of any acts in public office, not by reason of any acts as a public official, and to condemn him without a trial, without an opportunity to be heard, without the privilege of making a defense in a free American court of justice, to attempt to deprive him of his good name, to besmirch his character, is so unfair, so repugnant to the ideals of the administration of justice in America, as to merit the disapproval of this court.

The petitioner, Healy, has been accused and censured not as a public official but as an individual, and in no reported case in this country of which this court has cognizance has any such action been approved.

The court conceives it to be his duty in the administration of justice to offer every possible protection to every citizen, whether of the highest or the humblest, in the protection of his good name and reputation just as he likewise conceives it to be his duty to protect society by the punishment of evildoers who have been charged and convicted of crime.

This grand jury has undoubtedly unintentionally acted as the judge in a star chamber proceeding and has rendered the verdict without giving the defendant his day in court. It is to be hoped that future grand juries will avoid transgressing upon the inherent rights of American citizenship, upon the highest ideals of American justice, and that other citizens may not be so wrongfully and unjustly humiliated.

As to the petitioner, Healy, the court grants the only relief that is available. The motion to strike from the records of this court each and every part of said presentment of the April, 1936, grand jury which in any manner refers to the petitioner, Healy, is granted. Submit order.