HAYSLIP *v*. STATE.

(*Nashville*, December Term, 1951.)

Opinion filed March 7, 1952.

Rehearing denied June 7, 1952.

J.E. Madden and Sam F. Cole, both of Memphis, for petitioner.

John M. Heiskell, District Attorney General of Shelby County, acting as Amicus Curiae, and Greenfield Q. Polk, Assistant District Attorney General of Shelby County, also acting as Amicus Curiae, for respondent.

Mr. Justice Burnett delivered the opinion of the Court.

This case comes to us on a motion of the petitioner, Maurine D. Hayslip, to expunge from a report of the Grand Jury of Shelby County certain portions of that report. The gravamen of the complaint is that the report, or the portions complained of, was extra-judicial and not within the province of a grand jury under the Constitution and laws of this State.

The trial court denied the petition to expunge and as a result thereof this appeal followed. We have heard

argument, investigated many authorities, and now have the matter for disposition.

As a result of statements in the public press and otherwise, made by the petitioner, to the effect that certain immoral practices, amounting to Violation of the Age of Consent, were being tolerated by the authorities of one of the Memphis high schools, the Superintendent of Schools and the Chairman of the Board of Education requested that the Grand Jury investigate these charges. As a result of this investigation the Grand Jury, under its oath, made a complete finding on the matter and presented their written report thereon to the trial judge. This report completely negatives the rumors which the jury had under investigation. Among other things the Grand Jury says:

"Our extensive investigation reveals no scintilla of evidence of the existence of a 'non-virgins' club at Treadwell and does reveal very substantial and creditable evidence that no such club exists or ever existed."

The portions of the report complained of and asked to be expunged from this presentment are:

"We have carefully considered all of the charges made in the statement of Mrs. Maurine D. Hayslip and heard her in full. It is our opinion that her continued employment in the City Schools would be unadvisable and a disservice to the community. * * *

"We cannot escape the conclusion that the Treadwell School has been viciously maligned by the unfounded charges of Mrs. Maurine D. Hayslip. We particularly regret this because of the many splendid young men and women, student leaders, with whom we came in contact during our investigation and who felt that the stigma cast on the school by these ru-

mors would seriously deter the progress of the school.''

Violation of the Age of Consent is a felony in this State as defined under Code Section 10786. This offense may be the subject of presentment and indictment by a Grand Jury. We say this because Code Section 11582 provides:

"The grand jury shall have inquisitorial powers over all indictable or presentable offenses committed or triable within the county.''

▮ At common law a Grand Jury had no inquisitorial power. *State* v. *Wilson,* 115 Tenn. 725, 91 S. W. 195. "But now the power of the Grand Jury has been greatly enlarged, and under the second mode of making inquiry, they may, in respect to all offenses send for witnesses and make investigation whenever they or any one of them suspect a violation of the law.'' Caruthers History of a Lawsuit—Gilreath, 7th Edition, Sec. 723, page 832.

It is not necessary for us to go into the history of the Grand Jury or to enter into any academic discussion of its progress to the present date. Suffice it to say that the history of the Grand Jury and its authority have been very ably discussed in many opinions which we have read. At the bottom of page 1378 of 106 A. L. R. is an interesting note setting forth the history of the inquisitorial power of the Grand Jury. The case to which this note is attached is McNair's Petition, 324 Pa. 48, 187 A. 498, 106 A. L. R. 1373. The writer of the opinion refers to many cases on the subject. There will also be found notes in 22 A. L. R. 1356 and 120 A. L. R. 437 annotating many cases from various jurisdictions on this subject. One interested may likewise run these annotations down through the ALR Digest and find, presumptively, all other cases on the subject that have been decided since

the notes in these three cases. It is said that no better statement of the origin, history, and general duties of Grand Juries may be found than is in the oft quoted summary of Field, C. J., *In re Charge to Grand Jury,* Fed. Cas. No. 18255, 2 Sawy. 667. This charge will be found quoted in full in 22 A. L. R. at page 1356, and we have found it in many of the opinions that we have read on this question.

This Court, speaking through the late Chief Justice Green, in *State v. Davidson,* 171 Tenn. 347, 352, 103 S. W. 2d 22, 24, has very succinctly and well stated the present inquisitorial power of the Grand Jury as follows:

"It was well established before the Code of 1932 that the grand jury might present upon examination of witnesses for any offense respecting which they had inquisitorial power. The two sections of the Code of 1932 just quoted (Code Section 11582, 11592) give to the grand jury inquisitorial power with respect to every offense. In enacting the Code of 1932, the Legislature made the changes noted with respect to the inquisitorial power of the grand jury with the decisions of this court before them. It is impossible to avoid the conclusion that the design of the Code of 1932 was to make all offenses subject to prosecution upon presentment."

We think it was the duty of the Grand Jury to investigate these charges. The question is, how far should the Grand Jury go in its report to the trial judge when it does not find an indictment or a presentment so that the one charged might have an opportunity to defend himslf or herself in open court? In the vast majority of the cases which have been considered by courts of last resort those courts have held that a Grand Jury has no authority to make a report criticizing individuals either

by name or by inference, and that a Grand Jury's powers or authority are limited to those conferred upon it by law. It is the opinion of most of these courts of last resort that when a Grand Jury. has finished its investigation and has found nothing as a basis for accusing anyone by indictment or presentment that then it is the duty of the Grand Jury to say so and depart. Some cases to the contrary are *Irvin* v. *Murphy,* 129 Cal. App. 713, 19 P. (2d) 292; *In re Report of Grand Jury,* 152 Fla. 154, 11 So. (2) 316; *In re Jones,* 101 App. Div. 55, 609, 92 N. Y. S. 275, and *Application of Knight,* 176 Misc. 635, 28 N. Y. S. (2d) 353.

██ The Supreme Court of Arkansas in *Ex parte Cook,* 199 Ark. 1187, 137 S. W. (2d) 248, held that whether or not a Grand Jury's report should be expunged was in the discretion of the trial court. The facts of that case were that the person moving to have the record or a portion thereof expunged was the moving party in the cause, causing the report. The basis for the holding of *Application of Knight,* supra, (N.Y. Intermediate Court) seems to be that since Knight the applicant for expungement was the movent in securing the Grand Jury investigation that then he was in no position to have their report expunged.

In *Bennett* v. *Kalamazoo,* Circuit Judge, 183 Mich. 200, 150 N. W. 141, 144 Ann. Cas. 1916E, 223, the Supreme Court of Michigan stated very succinctly the underlying reason upon which the majority opinion is based, by those courts holding to the majority rule, thus: "A review of all the cases cited upon both sides of the question, and such others as we have been able to examine, leads us to the conclusion that inherently, apart from statutory sanction, the grand jury has no right to file such a report, unless it is followed by an indictment. The evils of the

contrary practice must be apparent to all. While the proceedings of the grand jury are supposed to be secret, it is clear that in the present instance that secrecy was not inviolate, for the objectionable report found its way into the press of Kalamazoo within a few hours after it had been filed. Whether the matter contained in such report be true or false, it can make no difference with the principle involved. In either event the accused person is obliged to submit to the odium of a charge or charges, based, perhaps, upon insufficient evidence, or no evidence at all without having the opportunity to meet his accusers and reply to their attacks. This situation is one which offends every one's sense of fair play and is surely not conducive to the decent administration of justice.''

We thus conclude that the majority rule, as above stated, is the sound and the fair rule to follow. As is stated by the Supreme Court of Florida, supra [152 Fla. 154, 11 So. (2d) 318:] ''They (Grand Jury) will not be permitted to single out persons in civil or official positions to impugn their motives, or by word, imputation, or innuendo hold them to scorn or criticism.''

The underlying reason for these opinions is not present in the instant case. In the case now before us the petitioner is presumed to have known when she publicized charges of Violation of the Age of Consent that a Grand Jury investigation must or should follow such charges. As a result of her charges such an investigation did follow. Evidence was heard before the Grand Jury, including that of the petitioner, and the Grand Jury concluded as heretofore set forth. Under such circumstances the movent to expunge having initiated the proceedings after publicizing them was in no position to object to the result of the investigation.

As said in *Application of Knight,* supra [176 Misc. 635, 28 N. Y. S. (2d) 355]:

"It would be sad indeed if the day should ever arrive when an individual could set the wheels of justice in motion by presenting his case before the grand jury after having publicized charges against public officials and public agencies and it should be held that the grand jury investigating those charges was not at liberty to state as a matter of record that it found them baseless. Public confidence in its law enforcement officers is of prime importance; the petitioner having broadcast his charges, it would be unreasonable for the court to hold that his failure to substantiate such charges should not be made a matter of public record."

And as said by the Supreme Court of Arkansas, speaking through the Chief Justice:

"We think petitioner's act in requesting an investigation was responsible for the result. True, he did not anticipate critical comment; yet, in view of publicity given the charges, the grand jury evidently thought comment on its findings should be made. It was within the discretion of the circuit court to receive or reject the deport." *Ex parte Cook,* supra [199 Ark. 1187, 137 S. W. (2d) 249].

It, therefore, seems to us that under circumstances of this case, the facts arising as are shown herein, that then it should become a discretionary matter for the trial court, as to whether or not the report or portions thereof of the Grand Jury are expunged. For the reasons herein stated we must deny the petition and the same is dismissed at her cost.

NEIL, Chief Justice (dissenting).

I respectfully dissent from the majority opinion, holding that the majority rule as stated in *Bennett* v. *Kalamazoo,* Circuit Judge, 183 Mich. 200, 150 N. W. 141, *"is the sound and the fair rule to follow"*, but finally repudiated it on the ground that Mrs. Hayslip initiated the proceedings before the grand jury and was "in no position to object to the result of the investigation."

It must have been gratifying to the patrons of the school, and the public generally, that the charges of immorality were without justification. But the conclusion reached by the majority is unsound in principle in that grand juries henceforth are permitted to defame any person who may suggest that acts of immorality are being committed in the community. Every citizen who now voluntarily goes before a grand jury and undertakes to give it any information relating to criminal misconduct does so at the peril of being defamed in an official report when the evidence is not deemed sufficient upon which to base an indictment.

In the case at bar it would have been within the province of the grand jury to say in its report that Mrs. Hayslip testified to no fact that warranted the return of an indictment, and as a result of an independent investigation, no evidence of immorality was obtainable. But it was not permissible to include in its report a statement that she *"viciously maligned"* the school and was rendering "a disservice to the community" as a teacher in the school.

I do not question the right of the grand jury to investigate the condition of jails, penal farms, and numerous county institutions and agencies with the purpose in view of recommending changes for their improvement as well

as to indict those who are shown to be guilty of any criminal offense. Code Section 11584 makes it their duty to do so. But, not having found an indictment against any official, or employee connected with any institution or agency so investigated, it has no authority to single out any individual and make a report as to his or her moral character or otherwise hold them up to public scorn. Such a report is extra-judicial and has no place upon the records of the Criminal Court.

I fully agree with what is admittedly the majority rule and which is quoted in majority opinion: "They (Grand Jury) will not be permitted to single out persons in civil or official positions to impugn their motives, or by word, imputation or innuendo hold them to scorn or criticism."

In 24 Am. Jur., Section 36, page 859, it is said: "It is the right of a person censured or criticized by a report of the grand jury to have it expunged from the record."

The sound reason for expunging from the record the report of the grand jury in the instant case is clearly stated by the New York County Court, as follows: "To single out an individual, not by reason of any acts in public office, not by reason of any acts as a public official, and to condemn him without a trial, without an opportunity to be heard, without the privilege of making a defense in a free American court of justice, to attempt to deprive him of his good name, to besmirch his character, is so unfair, so repugnant to the ideals of the administration of justice in America, as to merit the disapproval of this court." *In re Healy*, 161 Misc. 582, 293 N. Y. S. 584, 602; 120 A. L. R., pp. 440-441. See also *In re Grand Jury Report in Baltimore City*, 152 Md. 616, 137 A. 370.

While it may be true generally that the matter of expunging a grand jury's report is within the sound discretion of the trial court, nevertheless it is not discre-

tionary where the report is defamatory of witnesses and no indictment is found. No court is ever so high and mighty that the law clothes it with discretion to say when a grand jury may defame a witness in its official report.

I entertain the highest respect for the learned trial judge. But I cannot do otherwise than disagree with him and dissent from the majority opinion.

## Petition to Rehear.

Burnett, Justice.

Maurine D. Hayslip has filed a petition to rehear in this case. The primary contention of the petition is that we erred in concluding that Mrs. Hayslip was the moving party in bringing about the grand jury report fully referred to in our original opinion. It is true that the record does not contain a transcript of the evidence before the grand jury but the only conclusion that one can arrive at from reading this report and other parts of the record is that she was the movent in this cause. We cannot shut our eyes to what is so evident by the record and must certainly give verity to the report of the grand jury which certainly shows that this was true. We think that there was no error in our reaching this conclusion.

All authorities cited in the petition to rehear were very thoroughly considered by us before we determined the matter originally. There is no new authority brought to our attention and we must conclude that our original opinion is correct according to the views of the majority for the reasons cited in the original opinion.

The result is that the petition to rehear must be overruled.